Opinion issued August 31, 2005
     





 
 



In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00492-CR




PABLO INFANTE MAGANA, Appellant

V.

THE STATE OF TEXAS, Appellee



 
On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 947785
 

 
 
O P I N I O N
 
 
          A jury found appellant, Pablo Infante Magana, guilty of possession with intent
to deliver cocaine, weighing at least 400 grams, and the trial court assessed his
punishment at twenty years in prison. We determine (1) whether delay in obtaining
a Spanish-speaking officer to explain the consent to search form, after appellant was
stopped for a traffic offense, rendered appellant’s consent the suppressible fruit of an
unlawful detention, and (2) whether prosecutorial argument improperly struck at
appellant over the shoulders of his counsel. We affirm.
Facts
 
 
          On May 5, 2003, Narcotics Division Officers of the Houston Police
Department were conducting surveillance on appellant and his household. Officers
observed appellant drive to a gas station in a red Ford Expedition and meet with
Angel Alvarez and Misael Flores, a confidential informant. After the three men
conversed, Alvarez got into appellant’s vehicle and they drove away. Appellant
stopped at an audio store, and then drove Alvarez back to the gas station at which
they had met. Appellant went to a drive-through window at a bank before returning
home.
           Once back at his home, appellant went inside and his wife came outside and
began cleaning. Shortly thereafter, appellant emerged from the home, carrying a
black trash bag that he deposited into his trash can by the curb. About half an hour
later, appellant left the home carrying a maroon knapsack, which he placed in the
back of the Expedition before driving away. 
          Appellant drove to a fast-food restaurant and picked up Alvarez. Appellant
then proceeded to the feeder road of highway 59, where Officer Gurley, driving an
unmarked police car, observed appellant commit traffic violations, including failing
to signal a lane change and making an unsafe lane change. Officer Gurley requested
that Officer Arnold, driving a marked patrol car, stop appellant’s vehicle for the
traffic violations. 
          Officer Arnold stopped appellant at approximately 3:20 p.m. Officer Arnold
asked appellant, in Spanish, to produce his driver’s license. At about 3:25 p.m.,
Officer Arnold asked appellant, in English, if he would consent to a search of his car. 
Appellant did not appear to understand. Nevertheless, appellant appeared to be
cooperative, so Officer Arnold began filling out a written consent form, one side of
which is in Spanish. 
          While Officer Arnold was still filling out the form, Officer Lerma arrived and
took over filling out the consent form. Once Officer Lerma had completed the form,
he verbally read the form’s text in Spanish to appellant and advised him that he had
a right to refuse consent. After asking appellant if he could read Spanish, and when
appellant answered affirmatively, Officer Lerma asked appellant to sign it. Appellant
signed the form and stated that he understood what he was doing. The consent to
search authorized a search of both appellant’s vehicle and home.
          Officer Lerma then conducted a search of the vehicle and recovered the maroon
knapsack from the back of the Expedition and examined its contents. Ultimately, it
was determined that the knapsack contained four kilograms of cocaine. Plastic
wrappers and a hollowed-out drive shaft were recovered in the search of appellant’s
home.
                                                   Motion to Suppress
 
 
          In his first point of error, appellant contends that the trial court erred in denying
his motion to suppress because his detention was unconstitutionally prolonged.           A trial court’s ruling on a motion to suppress evidence will not be set aside
unless there is an abuse of discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996); Taylor v. State, 945 S.W.2d 295, 297 (Tex. App.—Houston [1st
Dist.] 1997, pet. ref’d). We will afford almost total deference to a trial court’s
determination of facts supported by the record, especially when the findings are based
on the evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997); Spight v. State, 76 S.W.3d 761, 765 (Tex. App.—Houston
[1st Dist.] 2002, no pet.). Here, the trial court did not make explicit findings of
historical fact; thus, we review the evidence in the light most favorable to the trial
court’s ruling. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). 
We assume that the trial court made implied findings of fact supported in the record
that buttress its conclusion. Id. Because we do not determine credibility, our de novo
review of reasonable suspicion, probable cause, consent, and mixed questions of law
and fact become a de novo review of legal questions. State v. Derrow, 981 S.W.2d
776, 778 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d) (citing Ornelas v. United
States, 517 U.S. 690, 697-99, 116 S. Ct. 1657, 1661-62 (1996)).
          A traffic stop is a detention and must be reasonable. Davis v. State, 947
S.W.2d 240, 244 (Tex. Crim. App. 1997). To be reasonable, a traffic stop must have
been justified when the person was initially stopped and not be longer than necessary
to effectuate the purpose of the stop. Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct.
1319, 1325 (1983); Davis, 947 S.W.2d at 245. Once the reason for the stop has been
satisfied, police officers may not use the stop as a fishing expedition for unrelated
criminal activity. Davis, 947 S.W.2d at 243. However, an officer may request
consent to search a vehicle after a completed traffic stop, but may not detain the
occupant or the vehicle further if such consent is refused, unless there is reasonable
suspicion of some criminal activity. Levi v. State, 147 S.W.3d 541, 544 (Tex.
App.—Waco 2004, pet. ref’d); Spight, 76 S.W.3d at 768; Simpson v. State, 29 S.W.
3d 324, 328 (Tex. App.—Houston [14th Dist] 2000, pet. ref’d).
          Appellant concedes that his traffic stop was justified when it began and when
Officer Arnold requested his driver’s license. However, appellant argues that the stop
became unreasonable when Officer Arnold turned his attention from the traffic stop
to acquiring consent to search appellant’s vehicle and home. Appellant urges this
Court to hold that it was unreasonable for Officer Arnold to detain him for
approximately fifteen minutes while filling out a consent form and waiting for a
Spanish-speaking officer to arrive. We disagree with appellant’s characterization of
the “prolonged detention” as being 15 minutes while waiting for a Spanish-speaking
officer to arrive. We agree only that the record shows that the Spanish-speaking
officer arrived before Officer Arnold had finished filling out the consent form. More
importantly, appellant had not refused to give consent, but appeared to be
cooperative, albeit not fully understanding the request for consent because of the
language barrier.
          Logic compels the conclusion that, if an officer may request consent after a
completed traffic stop, as long as the person stopped is allowed to go if he refuses
consent, an officer may certainly request consent during a traffic stop, as long as the
stop is not prolonged beyond its normal duration, if he refuses consent. Here,
appellant did not refuse consent. We hold that appellant’s consent was not the fruit
of an unlawful, prolonged detention.
          Appellant relies on Herrera v. State, 80 S.W.3d 283 (Tex. App.—Texarkana
2002, pet. ref’d). In Herrera, Officer Crawford, who was in an unmarked car,
observed Herrera commit a traffic violation and notified Officer Garrison, who was
in a marked car, to stop Herrera’s car. Id. at 287. Officer Garrison pulled Herrera
over, but did not give him a citation because he did not observe Herrera commit the
violation. Id. Once Officer Garrison learned that Herrera did not speak English, he
called for a Spanish-speaking officer to come to the scene. Id. Meanwhile, Officer
Garrison ran a background check on Herrera. Id. When the Spanish-speaking officer
arrived at the scene, he told Herrera that he wanted his consent to search his car and
apartment. Id. Upon searching Herrera’s apartment, the police found cocaine. Id.
at 286. The court found that the initial stop was unduly prolonged beyond the
original purpose for the stop without reasonable suspicion to further detain Herrera. 
Id. at 289. 
          We disagree with the ruling in Herrera for two reasons. First, the Spanish-speaking officer asked Herrera during a lawful traffic stop for consent to search his
car and apartment, and Herrera gave his consent. Although the Spanish-speaking
officer immediately asked for consent upon arriving, his presence was also necessary
to complete the initial traffic stop investigation. Neither was the traffic investigation
unduly prolonged to obtain consent because Herrera readily consented upon being
asked. Any further detention was to effectuate the search pursuant to consent. It
needed no other justification. Second, the issue is not whether the officer asks for
consent in the middle of the stop or after the stop is complete, but whether the consent
was voluntary under all the circumstances. 
          In Spight, this Court specifically refused to adopt a bright-line approach, such
as that utilized in Herrera, that it is unreasonable per se for an officer to request
consent to search after the traffic investigation has concluded. Spight, 76 S.W.3d at
768. Rather, this Court concluded that the proper focus is on the voluntariness of the
consent. Id. We find two of the cases relied upon by Herrera distinguishable on the
basis that a prolonged detention occurred after a stopped suspect refused to give
consent. See Davis, 947 S.W.2d at 241; McQuarters v. State, 58 S.W.3d 250, 254
(Tex. App.—Fort Worth 2001, pet. ref’d). We disagree with the third case relied on
by Herrera because there was no improper police conduct when, after the traffic stop
was completed, the defendant agreed to answer further questions and admitted he had
a roach (butt of smoked marijuana) in the car thereby giving the officer probable
cause to recover the roach and arrest appellant for possession of marijuana. State v.
Daly, 35 S.W.3d 237, 240 (Tex. App.—Austin 2000, no pet.).
          In this case, appellant does not challenge the voluntariness of his consent. 
Accordingly, we hold that appellant’s consent to search given during a valid traffic
stop justified the officer’s search of appellant’s vehicle and seizure of the four
kilograms of cocaine.
          We overrule appellant’s first point of error.
 
Jury Argument
 
 
          In his second point of error, appellant contends that the trial court erred in
overruling his objection to the State’s closing argument. Specifically, appellant
contends that, by arguing that it was a “coincidence” that the facts of appellant’s
testimony amounted to a legal defense, the State implied that defense counsel had
manufactured evidence to create a legal defense and had offered perjured testimony. 
          The law provides for, and presumes, a fair trial, free from improper argument
by the State. Long v. State, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). Proper
jury argument generally must encompass one of the following general areas: (1) a
summation of the evidence presented at trial; (2) a reasonable deduction drawn from
that evidence; (3) an answer to the opposing counsels argument; or (4) a plea for law
enforcement. Guidry v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); Sandoval
v. State, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). To
determine whether a party’s argument properly falls within one of these categories,
we must consider the argument in light of the entire record. Sandoval, 52 S.W.3d at
857. 
          The State may not use closing argument to strike at a defendant over the
shoulders of his counsel or accuse that counsel of bad faith. Fuentes v. State, 664
S.W.2d 333, 335 (Tex. Crim. App. 1984). A prosecutor runs a risk of improperly
striking at a defendant over the shoulders of counsel when the argument is made in
terms of defense counsel personally and when the argument explicitly impugns
defense counsel’s character. Id. While no one fixed rule emerges to determine what
is improper jury argument, we thus look for argument that refers to defense counsel
personally or argument that impugns opposing counsel’s character. See Mosley v.
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). 
          In the present case, appellant relies on such cases as Gomez v. State, 704
S.W.2d 770, 771(Tex. Crim. App. 1985) (prosecutor stated “We are not paid to satisfy
Pat Abeyta, or anyone else that he drags down here from Lubbock to manufacture
evidence.”), Bell v. State, 614 S.W.2d 122, 123 (Tex. Crim. App. 1981) (prosecutor
stated that counsel’s duty was to “see that his client gets off even if it means putting
on witnesses who are lying.”), and Jones v. State, 205 S.W.2d 590, 592 (Tex. Crim.
App. 1947) (prosecutor stated “My dear fellow, you needn’t have worried one minute
because Dusty Miller will take care of everything and furnish the evidence.”) to
support the proposition that inflammatory arguments that impugn the integrity of
defense counsel have been condemned. 
          We have no disagreement with appellant’s cases, but significant differences
exist between the arguments in the above-cited cases and the argument in this case. 
Here, the prosecutor’s comments were directed at the veracity of appellant and his
defensive theories, not at defense counsel himself. For example, in context, the
prosecutor repeatedly asked the jurors what were the odds of appellant’s testimony
regarding various defensive theories being true. A prosecutor is allowed to argue that
the witnesses in the case are not worthy of belief. See Satterwhite v. State, 858
S.W.2d 412, 425 (Tex. Crim. App. 1993). Similarly, it is proper for a prosecutor to
attack the defense’s argument rather than the defense counsel. Howard v. State, 896
S.W.2d 401, 405 (Tex. App.—Amarillo 1995, pet. ref’d); see also Tilbury v. State,
890 S.W.2d 219, 224 (Tex. App.—Fort Worth 1994, no pet.) (statements regarding
defense of necessity and “smoke and mirrors” not improper because statements did
not directly accuse defense counsel of lying or encouraging defendant to lie; rather,
statements were argument that defendant had tailored his story to fit his defenses). 
As we view the argument in light of the evidence, the prosecutor’s argument shows
that, when appellant learned what defenses were possible, he tailored his testimony
to fit those defenses. The arguments were striking directly at appellant, rather than
over the shoulders of his attorney. Accordingly, the trial court did not err in
overruling appellant’s objection to the prosecutor’s argument. 
          We overrule appellant’s second point of error. 
 
 
 
Conclusion
 
          We affirm the judgment of the trial court.                                                
 
 
 
                                                             Tim Taft
                                                             Justice
 
Panel consists of Justices Taft, Alcala, and Higley.
 
Publish. See Tex. R. App. P. 47.2(b)