Opinion issued October 8, 2009 
 
                                       

 


     




                                        





In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00670-CR




RONALD COMBS, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1091352


 

MEMORANDUM OPINION
          Appellant, Ronald Combs, pled guilty to possession of over 400 grams of
cocaine with intent to deliver. The trial court assessed punishment at 15 years’
imprisonment and a nominal fine. Appellant contends that the trial court erred in
denying his motion to suppress.


 We affirm.
Background
          On November 2, 2006, Trooper Jacobs of the Texas Department of Public
Safety (“DPS”) was working routine traffic control on the eastbound side of Interstate
10. At approximately 9:15 p.m., Jacobs stopped a vehicle for following another
vehicle too closely.


 At the hearing on appellant’s motion to suppress, Jacobs
testified that the vehicle was following the 18-wheeler tractor-trailer truck in front of
it at a distance of approximately one-and-a-half car lengths, a distance that was
“dangerous because at that particular point, it was medium traffic still out there; and
if he [the driver of the trailing vehicle] didn’t have enough time to maneuver an
obstruction or anything else in the roadway, he has to go left or right, and at that
particular point he would be going into other traffic.” Through his police training,
Jacobs further testified, he learned that “the optimal [following] distance would be
one car length per 10 miles per hour” and that the tractor-trailer was going “between
65 and 67 miles per hour,” meaning that a proper following distance would have been
approximately six-and-a-half car lengths. Jacobs also saw a bright light in the
passenger’s compartment of the vehicle that “appeared to be a TV projection screen”
mounted in the compartment in violation of the Texas Transportation Code.



          After appellant, who was driving, pulled the car over, Jacobs noticed that the
vehicle had an expired Ohio registration sticker and learned that it was a rental car.
Jacobs testified that the rental agreement indicated that appellant’s passenger, Esther
Staton, had rented the car at just after 10 a.m. on October 31 in Columbus, Ohio.
Jacobs estimated the drive from Columbus to Houston at “[a]nywhere between an 18-
and 20-hour trip,” meaning that, having rented the car in the late morning on October
31, appellant and his passenger had arrived in Houston on November 1 at the earliest. 
          Jacobs took appellant back to his cruiser to run a warrant check and license
plate checks on the rental car. Jacobs also began asking appellant questions designed
“to clarify about the turnaround trip and why they were leaving [Houston] so soon.”
Jacobs testified that he is a highly decorated and extensively trained drug interdiction
officer and that his training and experience have taught him that quick turnaround
trips are “something that [drug couriers] typically do. They typically come in and try
to get in and get out real quick.” Jacobs also testified that Houston and Columbus
both play major roles in the drug trade, Houston as a “hub” and Columbus as one of
many “source cities.” 
          In response to Jacobs’s questions, appellant said that he and Staton had been
in Houston “for a couple of days” to see Staton’s son. When Jacobs asked whether
appellant and Staton had seen Staton’s son, appellant responded that they had not.
Jacobs testified that, although he tried to give appellant “the benefit of the doubt,” he
found appellant’s response strange considering the distance between Columbus and
Houston. Jacobs also testified that, when he asked appellant about Staton, appellant
indicated that he did not know Staton’s last name, saying that he “only knew her by
Ms. Esther.” Additionally, over the course of the conversation, Jacobs testified,
appellant “was rambling on and just talking” and giving answers that “didn’t match
what [Jacobs] was asking.” 
          Jacobs then left appellant in the cruiser and walked to the rental car to talk to
Staton in an attempt to “clarify two answers that [appellant] gave.” Jacobs testified
that, when he talked to Staton, Staton “stated that they were on a trip down to see her
sons . . . .” Jacobs then asked if Staton had seen her son, and Staton replied, “Yes.”
When Jacobs told her that appellant had said otherwise, Staton changed her story,
saying, “No, we didn’t [see my son]. I called him on the phone.”
          Jacobs asked Staton for permission to search the rental car “because she was
the renter of the car.” Staton gave Jacobs permission to search the vehicle. Jacobs
then informed appellant that Staton had consented to a search of the vehicle, and
appellant gave Jacobs permission to search his bags. After searching the rental car
for approximately two and a half minutes, Jacobs found cocaine in the trunk. 
          At the hearing on appellant’s motion to suppress, Jacobs and appellant testified,
and the State introduced the videotape of the traffic stop into evidence.
Motion to Suppress
          Appellant contends that the trial court erred in denying his motion to suppress
the cocaine because “Jacobs did not have specific articulable facts to either initiate
a traffic stop, or to continue to detain Appellant after the traffic stop investigation was
concluded . . . .” Appellant further argues that Jacobs did not receive valid consent
to search the vehicle.
Standard of Review
          We review a trial court’s ruling on a motion to suppress evidence for an abuse
of discretion. State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We
review the record in the light most favorable to the trial court’s conclusion. Id. We
will sustain the trial court’s ruling if it is reasonably supported by the record and is
correct on any theory of law applicable to the case, even if the trial court gave the
wrong reason for its ruling. Id.; Armendariz v. State, 123 S.W.3d 401, 404 (Tex.
Crim. App. 2003). 
          The defendant in a criminal proceeding who alleges a Fourth Amendment
violation bears the burden of producing some evidence that rebuts the presumption
of proper police conduct. Amador v. State, 221 S.W.3d 666, 672 (Tex. Crim. App.
2007). “A defendant meets his initial burden of proof by establishing that a search or
seizure occurred without a warrant,” as was the case here. Id. (quoting Russell v.
State, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986)). When the defendant does so, the
burden shifts to the State to prove that the search or seizure was nonetheless
reasonable under the totality of the circumstances. Amador, 221 S.W.3d at 672–73. 
 We give almost total deference to the trial court’s determination of historical
facts. Dixon, 206 S.W.3d at 590. This deferential standard of review “also applies to
a trial court’s determination of historical facts when that determination is based on
a videotape recording admitted into evidence at a suppression hearing.” Amador, 221
S.W.3d at 673 (quoting Montanez v. State, 195 S.W.3d 101, 109 (Tex. Crim. App.
2006)). We also afford the same level of deference to a trial court’s ruling on
“application of law to fact questions,” or “mixed questions of law and fact,” if the
resolution of those questions turns on an evaluation of credibility and demeanor.
Amador, 221 S.W.3d at 673. We review de novo “mixed questions of law and fact”
that do not depend upon credibility and demeanor. Id. 
Legality of Stop
          In its findings of fact and conclusions of law, the trial court found that “Jacobs
observed [appellant] driving his vehicle at an unsafe distance of one and a half
vehicle lengths behind an 18 wheeler while both vehicles were traveling
approximately 65 miles per hour . . . [and] also observed a blue light shining from
[appellant’s] vehicle’s windshield.”
           An officer conducts a lawful temporary detention when he has reasonable
suspicion to believe that an individual is violating the law. Ford v. State, 158 S.W.3d
488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has
specific, articulable facts that, when combined with rational inferences from those
facts, would lead him to reasonably conclude that a particular person actually is, has
been, or soon will be engaged in criminal activity. Id. This is an objective standard
that disregards any subjective intent of the officer making the stop and looks solely
to whether an objective basis for the stop exists. Id. A reasonable-suspicion
determination is made by considering the totality of the circumstances. Id. 
          In the instant case, Jacobs testified, and the trial court found, that the vehicle
being driven by appellant was following the truck in front of it at the unsafe distance
of one-and-a-half car lengths, when the optimal distance from a safety standpoint
would have been approximately six-and-a-half car lengths. Additionally, Jacobs
testified, and the trial court found, that he observed a blue light shining in the
passenger compartment of the vehicle, which could have been a prohibited object
such as a television. Because Jacobs could have reasonably concluded that appellant
had committed either or both of two traffic violations, the trial court did not err in
concluding that Jacobs was legally authorized to stop the vehicle driven by appellant.
Consent
          The trial court found that, during the course of the traffic stop, Jacobs noticed
that: (1) the rental agreement stated that the vehicle had been leased in Ohio two days
earlier by the passenger; (2) appellant and the passenger gave “inconsistent and
illogical” answers to Jacobs’s questions about the purpose of the “quick turnaround
trip;” (3) appellant knew his passenger only as “Ms. Esther;” and (4) appellant acted
nervous. As a result of his “brief” investigation, Jacobs, a “highly trained” drug
interdiction officer, became suspicious about “the legitimacy of [appellant’s] stated
trip,” developed a belief that “[appellant] and his passenger fit the profile of drug
couriers,” and acquired permission to search the vehicle.
          Appellant challenges Jacobs’s testimony and the trial court’s finding that
Jacobs developed his suspicion of criminal activity in part by examining the rental
agreement during the stop on the grounds that this testimony and finding are “clearly
disproved by the videotape” of the stop. Appellant argues that “the arresting officer
justified his detention and continued investigation by false statements and the trial
court relied on these erroneous statements to deny Appellant’s motion to suppress.” 
          After reviewing the videotape, we agree with Appellant that Jacobs does not
appear to request, discuss, or read the rental agreement on the videotape. However,
contrary to appellant’s arguments, whether Jacobs reviewed the rental agreement
prior to the search has no bearing on whether the initial traffic stop was illegal.


 
Likewise, because Jacobs received consent prior to proceeding with the search of the
vehicle, under the facts of this case, the existence of the rental agreement also has no
bearing on whether the subsequent search was illegal.
          A police officer may request consent to search a vehicle during or after a legal
traffic stop even without reasonable suspicion of criminal activity—though he may
not, unless reasonable suspicion exists, detain the occupant or the vehicle longer than
is necessary to effectuate the purpose of the stop if consent is refused. Magana v.
State, 177 S.W.3d 670, 673 (Tex. App.—Houston [1st Dist.] 2005, no pet.). “A
police officer may approach a citizen without probable cause or even reasonable
suspicion to ask questions or obtain consent to search. Likewise, reasonable
suspicion is not required for a police officer to request consent to search an
automobile after the reason for an initial stop is concluded as long as a message is not
conveyed that compliance is required.” James v. State, 102 S.W.3d 162, 173 (Tex.
App.—Fort Worth 2003, pet. ref’d) (citations omitted). In order to be valid, consent
to search must be “positive and unequivocal, and there must not be any duress or
coercion.” Allridge v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991); see also
Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (quoting
Schneckloth v. Bustamonte, 412 U.S. 218, 228, 93 S.Ct. 2041, 2048 (1973)) (consent
must “not be coerced, by explicit or implicit means, by implied threat or covert
force”). 
          Here, Jacobs asked Stanton, the passenger and actual renter of the car, for
consent to search. Staton gave unequivocal consent to search the car. The videotape
does not show that Jacobs threatened or coerced Staton in any way. Jacobs allowed
Staton to remain in the rental car while he discussed the traffic violations with
appellant and ran warrant and license plate checks, all of which took approximately
nine minutes. Jacobs then immediately approached the passenger side of the rental
car to talk to Staton. When Jacobs requested consent to search, he talked to Staton
for less than two minutes in a very cordial manner, and he gave no indication that
compliance with his request was required. Rather, he told Staton that he was “just
asking” if he could search the car. Staton consented to the search. 
          Because Staton—the actual renter of the car in question and the car’s sole
occupant after appellant left the vehicle—possessed joint access or control over the
rental car, her consent was also valid against appellant. See, e.g., Welch v. State, 93
S.W.3d 50, 52 (Tex. Crim. App. 2002) (where passenger consented to warrantless
search of truck and driver sought to suppress evidence found, analyzing totality of the
circumstances to determine whether passenger had joint access or control over truck
for most purposes, so that it would be reasonable to conclude that passenger had 
right to permit search of truck and that driver assumed risk that passenger might
do so). Appellant does not contest Staton’s joint access or control, or the validity of
her consent to the search of the vehicle, other than to complain that it took place
during an impermissible stop. 
          We overrule appellant’s second issue on appeal.          

Conclusion
          We hold that the trial court did not abuse its discretion in denying appellant’s
motion to suppress and affirm the judgment of the trial court.
 
                                                             
 
                                                             George C. Hanks, Jr.
                                                             Justice
 
Panel consists of Justices Keyes, Hanks, and Bland.
Do not publish. See Tex. R. App. P. 47.2(b).