COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | |
| | | No. 08-09-00190-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | Criminal District Court No. 2 |
| JOSE MEJIA, | § | |
| | | of Dallas County, Texas |
| Appellee. | § | |
| | | (TC# F0721715) |
| | § | |

**O P I N I O N**

The State of Texas appeals the trial court's order, granting Jose Mejia's motion to suppress the cocaine and heroin found in his car. For the following reasons, we reverse.[1]

**BACKGROUND**

On February 12, 2007, Officer Steve Grigg was patrolling Josey Lane when he observed Mejia, in a white Cadillac, stopped in the northbound left turn lane at the intersection of Josey Lane and Valley View. That intersection provided for dual left turn lanes, and Officer Grigg was stopped in the inner left turn lane. Four cars were stopped in the southbound lanes, as well. When the traffic light turned green for both northbound and southbound traffic, Mejia turned left in front of the oncoming southbound traffic.[2] As a result, a truck traveling southbound was forced to brake and swerve to the right to avoid a head-on collision. Accordingly, Officer Grigg initiated a traffic stop

---

[1] As this case has been transferred to this Court, we apply the law of the transferor court. *See* TEX. R. APP. P. 41.3.

[2] The light did not provide a protected arrow upon turning green.

for failure to yield the right of way.[3]

After Officer Grigg turned his overhead traffic lights on and shined a spotlight into the rear window of the vehicle, he saw Mejia reaching towards the floorboard in the center of the car. Officer Grigg thought Mejia could be securing a weapon. When he later approached Mejia, Officer Grigg noted that Mejia was extremely nervous. Mejia was shaking as he handed the officer his driver's license. Mejia told Officer Grigg that he was headed home, but the officer noted that he was traveling in the opposite direction from where he lived. Mejia also told the officer that he was on the phone to his wife and was going to a Mexican restaurant at the intersection of Webb Chapel and Valley View, but Officer Grigg never saw Mejia on the phone and he knew there was no such restaurant at that location. When Officer Grigg noted that he saw Mejia reaching towards the floorboard of the car, Mejia replied that he was simply getting his cell phone. Officer Grigg thought that was odd as he saw Mejia's cell phone on the seat right next to the arm rest.

Officer Grigg then ran a routine computer check for warrants. When he returned, he asked Mejia to exit the vehicle to investigate further because "something [] just didn't seem right by the way he was acting and answers he was giving . . . ." At that point, only a couple of minutes had passed from the time the vehicle was stopped. Officer Grigg asked to conduct a pat down for officer safety to which Mejia consented, and Officer Grigg found $470 in Mejia's front pocket. Mejia told the officer that he was unemployed. Officer Grigg asked Mejia about his vehicle, and Mejia responded that he bought it two months prior and paid cash for it. The officer questioned whether there was anything illegal in the car, and Mejia said that there was not. Officer Grigg then asked for permission to search the vehicle, believing the car may contain narcotics, and Mejia voluntarily

---

[3] *See* TEX. TRANSP. CODE ANN. § 545.152 (Vernon 1999) (providing that before turning left at an intersection, the driver "shall yield the right-of-way to a vehicle that is approaching from the opposite direction" ).

consented.  Officer Grigg did not advise Mejia of his right to refuse consent.  Further, Mejia was not under arrest or handcuffed when he consented.

As Officer Grigg looked inside the car, he saw an After-Market coin cup holder on the transmission hump in the center of the car.  That was the area Officer Grigg observed Mejia reaching towards prior to the stop.  When Officer Grigg lifted it up, two large Marks-a-Lot markers rolled out.  Upon picking them up, the officer noted that they felt strange and heavy, unlike regular markers, and that something (not ink) was moving around inside them.  At that point, Officer Grigg believed the markers contained narcotics and contacted Officer Morgan, a canine officer, who arrived a few minutes later.

Upon arrival with his dog, Kilo, Officer Morgan observed Mejia speaking to Officer Grigg.  Again, Mejia was not in handcuffs.  Officer Morgan asked Mejia to search the vehicle with Kilo, and Mejia consented.  Officer Morgan did not advise Mejia of his right to refuse consent.  Kilo, who was trained to sit upon detecting odors of marijuana, methamphetamine, cocaine, or heroin, began by walking counterclockwise around the car.  Kilo noticeably changed his behavior at the driver's door, which led Officer Morgan to believe narcotics were present.  When the officer opened the door, Kilo jumped in, put his nose to the front seat where the markers were laying, and then turned around and sat down.  Officer Morgan picked up the markers, noticed that they felt "funny," and felt something moving inside of them.  As he looked at the end of the markers, he saw pry marks.  Officer Morgan then pried open the markers and found the narcotics inside.  Accordingly, Officer Grigg placed Appellant under arrest.  The entire traffic stop only lasted about twenty minutes.

Mejia later filed a motion to suppress, claiming that the search was unreasonable and illegal, and that there was no legal basis for searching the vehicle based on the facts alleged.  After a hearing on the motion, the trial court granted the same and suppressed the narcotics.  The court also issued

findings of fact and conclusions of law. The court's fact findings followed the officers' testimonies and concluded that Mejia committed a traffic offense and freely and voluntarily consented to the search of his vehicle. However, the court determined that Officer Grigg lacked "enough specific articulable information to give him basis to request consent to search" and that the length of the detention was unreasonable.

## DISCUSSION

On appeal, the State alleges, in one issue, that the trial court abused its discretion by granting Mejia's motion to suppress. Specifically, the State asserts that the court utilized an improper standard in determining whether the consensual search was legal. According to the State, an officer need not have reasonable suspicion before requesting consent to search, even after the purpose of the traffic stop was accomplished, so long as the officer does not convey a message that compliance is required. We agree.

### Standard of Review

We review a trial court's decision to grant a motion to suppress for an abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In so doing, we afford almost total deference to a trial court's determination of historical facts but review *de novo* the court's application of the law to those facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). Where, as here, the trial court makes expressed fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We then review the trial court's legal ruling *de novo*. *Id*.

### Analysis

A traffic stop is a detention and must be reasonable under the United States and Texas Constitutions. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997). To be reasonable,

a traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Davis*, 947 S.W.2d at 245. Reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Spight v. State*, 76 S.W.3d 761, 765 (Tex. App. – Houston [1st Dist.] 2002, no pet.). When the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Robinette*, 519 U.S. at 41 (Ginsburg, J., concurring)). Therefore, once an officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe another offense has been or is being committed. *Davis*, 947 S.W.2d at 245 (citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

However, it is well-settled that an officer may ask for consent to search a suspect or his vehicle upon finishing a traffic stop, without having reasonable suspicion to do so, as long as the officer does not convey that compliance with the request is required. *See Caraway v. State*, 255 S.W.3d 302, 310 (Tex. App. – Eastland 2008, no pet.); *Magana v. State*, 177 S.W.3d 670, 673 (Tex. App. – Houston [1st Dist.] 2005, no pet.); *Levi v. State*, 147 S.W.3d 541, 544 (Tex. App. – Waco 2004, pet. ref'd); *James v. State*, 102 S.W.3d 162, 173 (Tex. App. – Fort Worth 2003, pet. ref'd); *Leach v. State*, 35 S.W.3d 232, 235-36 (Tex. App. – Austin 2000, no pet.); *Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App. – Houston [14th Dist.] 2000, pet. ref'd); *Spivey v. State*, No. 05-09-00300-CR, 2010 WL 1729339, at *3 (Tex. App. – Dallas Apr. 29, 2010, pet. ref'd) (op., not designated for publication); *Garza v. State*, No. 06-09-00087-CR, 2009 WL 4927544, at *4 (Tex. App. – Texarkana Dec. 23, 2009, no pet.) (mem. op., not designated for publication); *Atempa v. State*, Nos. 12-99-00463-CR, 12-99-00464-CR, 2001 WL 1443375, at *6 (Tex. App. – Tyler Nov.

14, 2001, pet. ref'd) (op., not designated for publication); *see also Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App. – Amarillo 2003, pet. ref'd) ("[O]nce the purpose of the stop has been effectuated and the officer's suspicions allayed, he may still ask the driver if he possesses any illegal contraband and then solicit his voluntary consent to search the vehicle."). And when consent to search is given, a continued detention and search of a vehicle are not subject to the reasonable-suspicion requirement. *Robinette*, 519 U.S. at 39-40; *James*, 102 S.W.3d at 173; *Spivey*, 2010 WL 1729339, at *3. At that point, the only applicable question is whether the consent to search was voluntary.

Here, the trial court found that Mejia committed a traffic offense thus justifying the traffic stop. Moreover, the trial court determined that Mejia freely and voluntarily consented to the search of his vehicle, finding that he was not handcuffed or coerced in any manner. Nothing in the record reflects that Officer Grigg told Mejia that his consent was required, and Mejia does not argue on appeal that his consent was involuntary or that he ever withdrew his consent. Nevertheless, the trial court concluded that Officer Grigg lacked "enough specific articulable information to give him basis to request consent to search" and that the continued detention was unreasonable as the purpose of the original traffic stop had concluded. But even if the purpose of the original traffic stop was accomplished and Officer Grigg lacked sufficient articulable facts giving rise to a reasonable suspicion that Mejia was engaged in other criminal activity, decisions that we do not reach, Officer Grigg could still legally ask Mejia for consent to search his car. *See Caraway*, 255 S.W.3d at 310; *Magana*, 177 S.W.3d at 673; *Levi*, 147 S.W.3d at 544; *James*, 102 S.W.3d at 173; *Leach*, 35 S.W.3d at 235-36; *Simpson*, 29 S.W.3d at 328; *Spivey*, 2010 WL 1729339, at *3; *Garza*, 2009 WL 4927544, at *4; *Atempa*, 2001 WL 1443375, at *6. And once Mejia voluntarily consented to the search, the continued detention for the search was justified without the need for Officer Grigg to articulate any reasonable suspicion thereto. *See Robinette*, 519 U.S. at 39-40 (continued detention and search of

a vehicle were reasonable when consent was given, even though no circumstances were noted that would have constituted reasonable suspicion of any further criminal activity); *Spivey*, 2010 WL 1729339, at \*3 (following the issuance of a citation, officer was not required to articulate a reasonable suspicion for search since defendant voluntarily consented to the vehicle search). Accordingly, we hold, under the facts of this case, that the trial court abused its discretion by suppressing the narcotics based on the assumption that the officer needed reasonable suspicion to continue the detention when he asked for and received consent to search the vehicle. The State's sole issue is sustained.

## CONCLUSION

Having sustained the State's sole issue, we reverse and remand for further proceedings.


GUADALUPE RIVERA, Justice

November 3, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)