

# NUMBER 13-10-00598-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DAVID ALEJANDRO FLORES ACOSTA,                              Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

## On appeal from the 430th District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez**

Appellant, David Alejandro Flores Acosta, raises three issues in his appeal from his conviction for aggravated robbery, a first-degree felony, and possession of marijuana, a state-jail felony. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011); *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(3) (West 2010). We affirm.

## I. BACKGROUND

The evidence and testimony produced during the course of appellant's jury trial reveal the following facts. On November 30, 2009, Rigoberto Ramirez met up with Angel Garza and they then went to pick up appellant. The three men drove around until Ramirez observed a particular residence in Hidalgo County occupied by Herlinda Hinojosa and her daughter Cecilia Hinojosa. Although Cecilia, a college student at the University of Texas, Pan American, normally lived in a dorm room on campus, on this particular night, she was staying with her mother in her parents' home. Herlinda's husband, a truck driver, was out of town on a job.

As Ramirez walked up to the residence, he saw the lights were on in the house, but he did not see anyone. He assumed that the house was occupied. He knocked on the door. Herlinda answered the door, and Ramirez asked her if he could use her phone because his vehicle was broken down. Herlinda noticed that Ramirez was carrying a black bag that contained a ski mask. She was suspicious and signaled her daughter to get the bat from her room. Cecilia ran off to the master bedroom to retrieve the bat. Cecilia grabbed the phone and dialed 911. She took the phone and the bat and locked the master bedroom door and the master bathroom door and hid in the closet located in the master bathroom.

Ramirez signaled Garza and appellant, who then rushed the door and tackled Herlinda. During the struggle, Herlinda screamed and was told by one of her assailants, "[S]cream all you want it doesn't matter" or "Keep screaming. Nobody's going to help you." Appellant was identified as the assailant who made this remark.

2

Ramirez then began to tie Herlinda up with duct tape. Garza and appellant moved off to ransack the house. During their search, Garza and appellant came to the door to the master bedroom and stated, "Someone is in here." Herlinda then heard a loud noise that she believed was the sound of the assailants knocking down the door. Cecilia testified that it appeared to be a crowbar that the men used to break open the door to the master bedroom and the door to the bathroom, where she was hiding.

After breaking through the doors to the master bedroom and the master bathroom, Garza and appellant came to the door to the bathroom closet, which was unlocked. Appellant entered the closet first and Garza followed him. Cecilia was scared that they would use the crowbar to beat her to death. She swung the bat and struck appellant on the head.

Garza and appellant ran back to the living room with Cecilia chasing them. Then, Garza turned around and struck at Cecilia, hitting her on the back with the crowbar. Cecilia swung the bat at Garza at the same time, but she was not sure if she hit him or not. Cecilia fell to the ground, and appellant held her down, covering her mouth and nose and causing her to have difficulty breathing. Cecilia feared that appellant was going to keep covering her mouth and nose until she stopped breathing and died.

Seeing what appellant was doing, Herlinda began struggling, protesting to the men that her daughter had a heart condition. Cecilia faked a panic attack, which prompted Ramirez to come over to her. She was then tied up, but not very well. Appellant asked Cecilia if she had called the police. She told him she had not. Appellant, who was dripping blood from his head wound, grabbed Herlinda by her hand

and dragged her back into a bedroom. Herlinda was scared that she was about to be raped and killed and that this would be the last time she would see her daughter.

At this point, Officer Veronica Cedillo arrived on the scene, where she observed a crowbar lying on the left side of the entrance to the residence. Appellant and Ramirez fled through the backdoor, and Garza fled in the car. Officer Cedillo followed appellant and Ramirez and observed that one of them dropped a black backpack. Officer Cedillo lost sight of appellant when he crossed into a vacant lot.

Garza was apprehended after a chase that led to his residence. Items stolen from the Hinojosa residence were recovered from the vehicle Garza used to escape. Ramirez's mother turned him into police. Garza and Ramirez both gave confessions that implicated appellant and that enabled police to obtain an arrest warrant for appellant and a search warrant for his residence.

SWAT team members found appellant hiding in his closet. Police found .04 ounces of marijuana in a medicine bottle in a drawer in appellant's room. Police also found 6.2 ounces of marijuana in a toolbox in a shed. A glass pipe typically used to smoke marijuana was also found in the shed outside appellant's residence.

Appellant's mother testified that appellant and his younger brother and cousins would hang out in the shed to be alone. Appellant's mother denied that the marijuana in the shed was hers.

DNA swabs were taken from the bat, Cecilia's face and hands, and the inside of the assailants' vehicle. The sample of blood taken from Cecilia's face and hands matched appellant. The sample from the bat matched Garza. The blood sample from the vehicle was not tested.

4

Herlinda testified that two computers, two cell phones, her daughter's purse, their car keys and money from her purse were taken during the robbery. Everything but the car keys and one of the cell phones was recovered and returned.

Cecilia testified that she needed a neck brace and an arm brace for several weeks after the attack. She suffered from a shooting pain down her arm to her little finger for several months. She required physical therapy to recover from the injury caused by the crowbar.

A jury found appellant guilty of two counts of aggravated assault and one count of possession of marijuana, as charged in the indictment. The jury assessed a 22-year prison sentence for each count of aggravated assault, in addition to a $10,000 fine for each offense, and a 2-year prison sentence for possession of marijuana. The trial court accepted the jury's punishment assessment, with the sentences to run concurrently. This appeal ensued.

## II. Legal Sufficiency

In issues one and two, appellant challenges the legal sufficiency of the evidence to prove aggravated robbery and possession of marijuana.

### A. Standard of Review

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899-99 (Tex. Crim. App. 2010) (plurality op.) (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified

5

in finding guilt beyond a reasonable doubt").  The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony.  *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)).  Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province.  *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)).  We must resolve any inconsistencies in the testimony in favor of the verdict.  *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

In reviewing the legal sufficiency of the evidence, we look at events occurring before, during, and after the commission of the offense, and we may rely on actions of the appellant that show an understanding and common design to do the prohibited act. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  Each fact need not point directly and independently to the appellant's guilt, so long as the cumulative effect of all the incriminating facts is sufficient to support the conviction.  *Id.*

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge.  *Coleman v. State*, 131 S.W.3d 303, 307 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240).

6

**B.     Deadly Weapon Finding and Aggravating Factor**

Under a hypothetically correct jury charge, the State must prove either that appellant committed the offense of aggravated robbery himself or that he was criminally responsible for the offense as committed by the conduct of another.  *See* TEX. PENAL CODE ANN. § 7.02(a)(2), (b) (West 2011); *Sorto v. State*, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005) ("[I]t is well-settled that the law of parties need not be pled in the indictment.").  The Texas Penal Code provides that a person commits the offense of robbery if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  *See* TEX. PENAL CODE ANN. § 29.02 (West 2011).  "In the course of committing theft" means "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of the theft."  *See id.* § 29.01(1) (West 2011).  The offense becomes aggravated robbery, a first-degree felony, when the actor, *inter alia*, uses or exhibits a deadly weapon.  *See id.* § 29.03(a)(2).  The hypothetically correct jury charge would contain these requirements.  *See Howard v. State*, 306 S.W.3d 407, 410 (Tex. App.— Texarkana 2010), *affirmed*, 333 S.W.3d 137 (Tex. Crim. App. 2011).

To prove appellant was guilty of aggravated robbery under the law of parties, the State was required to prove that appellant was criminally responsible for the actions of another under section 7.02 of the Texas Penal Code.  *See* TEX. PENAL CODE ANN. § 7.02.   Section 7.02(a)(2) makes a person criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the

7

commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). In addition, subsection (b) provides as follows:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* § 7.02(b). In this case, the jury was instructed on the law of parties.

Appellant argues that there is no evidence to support the jury's finding that a deadly weapon was used or exhibited during the robbery. *See* TEX. PENAL CODE ANN. § 29.03(a)(2). According to appellant, there is no evidence that he used or even touched the crowbar during the commission of the offense.

There was ample evidence from which the jury could conclude that a deadly weapon was used or exhibited during the commission of the offense. First, the police recovered a crowbar from the scene of the crime. Second, Cecilia testified that she believed the men used a crowbar during the commission of the offense. Third, Detective Dina Valdez testified that a crowbar can be used as a deadly weapon.

The jury heard testimony indicating that the crowbar was used to break open the door to the master bedroom, as well as the door to the master bathroom. The jury also heard testimony that when appellant and Garza entered the closet in the master bathroom, where Cecilia was hiding, one of the men was carrying the crowbar. The jury also heard testimony that Cecilia was struck in the back and injured by one of the men using the crowbar.

8

Based on the foregoing, the jury had sufficient evidence, both direct and circumstantial, to find that appellant either committed aggravated robbery by using and exhibiting a deadly weapon or that he was a party to aggravated robbery in which a deadly weapon was used or exhibited. Accordingly, appellant's first issue is overruled.

## C.    Possession of Marijuana

Under a hypothetically correct jury charge, the State was required to prove that appellant knowingly or intentionally possessed a quantity greater than four ounces but less than five pounds of marijuana without legal authority to do so. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(3). To prove the element of unlawful possession, the State was required to prove appellant: (1) exercised control, management, or care over the marijuana; and (2) knew the substance possessed was contraband. *See Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). The State must establish, either by direct or circumstantial evidence, that appellant's connection with the contraband was more than merely fortuitous. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). Evidence that "affirmatively links" appellant to the contraband is sufficient to prove that he possessed it knowingly. *Id.*

Although appellant argues that, "[a]t most, [he] was guilty of a Class B [misdemeanor] for the marijuana in his room," we believe the jury had a sufficient evidentiary basis to find that he was also guilty of possessing the marijuana found in the shed outside his residence. The jury heard undisputed testimony that appellant was in possession of the marijuana found in his room, and appellant's mother testified that he frequently hung out in the shed, where additional marijuana and a glass pipe for smoking marijuana were recovered. According to appellant's mother, appellant would

9

frequently hang out in the shed to be "alone." Although she too had access to the shed, she denied that the marijuana was hers. Based on the foregoing, a rational trier of fact could find that the marijuana recovered from the shed was in the control, management, or care of appellant and that appellant knew the substance possessed was contraband. Accordingly, appellant's second issue is overruled.

### III. IMPROPER JURY ARGUMENT

In his third issue, appellant complains that the trial court erred in overruling his objection to the State's improper jury argument.

#### A. Applicable Law

Proper jury argument includes four areas: (1) summation of the evidence presented at trial; (2) reasonable deduction drawn from that evidence; (3) answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000) (citing *McFarland v. State*, 845 S.W.2d 824, 844 (Tex. Crim. App. 1992)). To determine whether an argument falls within one of the four categories, we consider the argument in light of the entire record. *Magana v. State*, 177 S.W.3d 670, 674 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

To constitute reversible error, the argument must be manifestly improper or inject new, harmful facts into the case. *Jackson*, 17 S.W.3d at 673 (citing *Gaddis v. State*, 753 S.W.2d 396 (Tex. Crim. App. 1988); *Everett v. State*, 707 S.W.2d 638, 640 (Tex. Crim. App. 1986)). It must also have affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). In determining whether the appellant's substantial rights were affected, we consider the following: (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor's remarks), (2) curative measures, and (3) the

certainty of conviction absent the misconduct. *Montgomery v. State*, 198 S.W.3d 67, 95 (Tex. App.—Fort Worth 2006, pet. ref'd).

**B.    Standard of Review**

The trial court has broad discretion in controlling the scope of closing argument. *See Lemos v. State*, 130 S.W.3d 888, 892-93 (Tex. App.—El Paso 2004, no pet.). The standard of review for rulings on objections to improper jury argument is abuse of discretion. *York v. State*, 258 S.W.3d 712, 717 (Tex. App.—Waco 2008, pet. ref'd); *see also Cole v. State*, 194 S.W.3d 538, 546 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). The reviewing court should uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)).

**C.    Discussion**

Appellant complains about the following comment made during the State's main closing argument:

> Ladies and gentlemen of the jury this could be your family . . . . Do you want to feel safe in your home? Ladies and gentlemen of the jury, we have a problem in the Valley with crime. And if you ever wanted to be a part of fixing what's going on in the Valley, this is your most important opportunity. You can vote, you can follow the law, you can pay your taxes and send your kids to school, and you can go to the school board meetings, but right here is where the rubber meets the road. If you have ever wanted to take a stand against crime in the Valley and make an effort for everyone's family, the entire community needs your help.

We conclude that this argument falls squarely within the category of permissible jury argument involving a plea for law enforcement. *See Jackson*, 17 S.W.3d at 673. In its brief, the State has cited two decisions from the Texas Court of Criminal Appeals, which we also cite, in support of our conclusion. *See Borjan v. State*, 787 S.W.2d 53,

11

55-58 (Tex. Crim. App. 1990) (overruling challenge to State's comment, "[A]nd you're going to let him out?  Please don't do that . . . .  For the ones who never come and tell you about it, who are too frightened," because the State "was referring in general to those sexual abuse victims within the community" and this comment "constituted a proper plea for law enforcement"); *Stone v. State*, 574 S.W.2d 85, 90 (Tex. Crim. App. 1978) (overruling challenge to State's comment, "Let's think about [the child victim] and think about the other children that live in this community that are subjected to this type of conduct by others and use your common sense," because "this argument [is] a proper plea for adequate punishment and law enforcement").

Appellant's third issue is overruled.

## IV. CONCLUSION

The judgments of the trial court are affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
9th day of August, 2012.