# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00832-CR

**The State of Texas, Appellant**

**v.**

**Jose Angel Ibanez, Appellee**

**FROM COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY,**
**NO. 096798, HONORABLE ANNA M. BOLING, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The State charged Jose Angel Ibanez with the Class B misdemeanor of possession of less than two ounces of marihuana. *See* Tex. Health & Safety Code Ann. § 481.121 (West 2010). Ibanez filed a pretrial motion to suppress, contending that the evidence of the offense was obtained in violation of his constitutional rights. Following a hearing, the trial court suppressed the evidence. On appeal, the State contends that the trial court erred in suppressing the evidence, which was found during a lawful traffic stop. *See* Tex. Code Crim. Proc. Ann. § 44.01(a)(5) (West Supp. 2011) (permitting State to appeal order granting motion to suppress). Because we conclude that the trial court did not err in granting Ibanez's motion to suppress, we affirm the trial court's order.

## BACKGROUND

On the evening of June 5, 2010, Trooper Nicholas LaRocque of the Texas Department of Public Safety was driving northbound along Interstate Highway 35 in San Marcos, Hays County,

Texas.[1] LaRocque noticed a pickup truck pulling a flatbed trailer with an inoperative taillight, and he initiated a traffic stop of the truck. LaRocque then approached the cab of the truck and asked the occupants, a driver and a single passenger, for identification. The passenger produced a valid Texas driver's license, but the driver provided only a name and date of birth. When LaRocque relayed the information to the police communications office, he learned that the passenger was correctly identified as Jose Angel Ibanez and had some past criminal activity but no outstanding warrants. However, LaRocque was unable to confirm the driver's identity.

LaRocque and a fellow officer continued trying to identify the driver, and in the meantime they asked Ibanez about the ownership and destination of the truck and trailer. Ibanez explained that he was responsible for both, having rented the trailer and borrowed the truck from his brother's wife.[2] He stated that he was traveling from his home in McAllen, Texas, to retrieve a car he had purchased in New Mexico. Ibanez also stated that he was the driver's mechanic, they had met in a bar, and he had asked the driver to accompany him on this trip. However, Ibanez said he could not recall the driver's last name.[3] When LaRocque asked Ibanez about their route to New Mexico, Ibanez said he was less knowledgeable than the driver but believed they were taking IH-35 until it turned into I-10. LaRocque explained that the turnoff for I-10 was twenty or thirty miles to the south and that they were therefore off course.

[1] The facts recited herein are taken from the testimony and evidence, including a video recording from the camera in LaRocque's vehicle, presented at the suppression hearing. Unfortunately, the quality of the audio recording is poor. However, there is a counter on the tape that provides information about the relative timing of events recorded that evening.

[2] LaRocque testified at trial that Ibanez claimed the truck belonged to his brother. However, on the video recording, Ibanez can be heard first saying that the truck was his brother's and later explaining that it was his brother's wife's truck.

[3] According to LaRocque's testimony at the suppression hearing, Ibanez "didn't give us any fictitious answers or anything like that."

2

Shortly thereafter, the driver provided a different name and a Social Security number, but the officers could not confirm the name and learned that the Social Security number belonged to a woman. The troopers handcuffed the driver and left him standing against the front bumper of the troopers' vehicle while they continued to speak with Ibanez. According to LaRocque's testimony at the suppression hearing, they had begun to suspect that Ibanez and the driver were involved in running drugs. LaRocque said the basis for this suspicion was that the driver appeared nervous and was giving fictitious information, Ibanez claimed responsibility for the truck but was not its registered owner, and the pair were driving along a known artery for drug smuggling, far from what they claimed was their intended route.

About twenty minutes after the initiation of the traffic stop, the officers asked Ibanez for his consent to search the truck, and Ibanez gave his consent. While the officers conducted a thorough search of the cab and bed of the truck, the driver offered a third set of identifying information. After this information also proved false, the officers discussed transporting the driver to jail and using his fingerprints to search for his identity.

When the officers informed the driver of their plan to fingerprint him, he admitted that he was named Rey Reyes and had lied because his record would reveal an arrest warrant. This time, approximately an hour and fifteen minutes after stopping the truck, the officers confirmed that this last identity given by Reyes was correct. They also learned that Reyes had an outstanding warrant for evading arrest. As a result, the officers put Reyes in the back seat of the police vehicle.[4]

---

[4] Exactly when Reyes was formally arrested is unclear from this record. At the suppression hearing, LaRocque testified that he arrested Reyes between thirty and forty-five minutes after initiating the traffic stop. Defense counsel argued that the video showed the arrest occurring after just twenty minutes. In actuality, because many events occurred off camera and feedback between the officers' microphones sometimes interfered with the sound, the video does not definitively

3

According to LaRocque's testimony, after the officers finally identified Reyes, they called for a canine unit to do a "sniff" of the truck. The officers' search of the truck had not revealed anything illicit, but the officers decided to continue detaining Ibanez while they waited for the canine unit to arrive. When the drug dog arrived, approximately an hour and forty-five minutes after the start of the original traffic stop, the dog alerted the officers to the presence of drugs. Based on the alert, the officers found a small baggie of marijuana inside a change of clothing that was wrapped in a white towel in the truck's back seat.

LaRocque noted that the clothing included a white t-shirt and size 32 blue jean shorts, which matched the size and appearance of the clothing Ibanez was wearing. Meanwhile, a different change of clothes that did not contain marijuana resembled the t-shirt and size 30 black pants that Reyes was wearing. Although Ibanez protested that he did not do drugs, would not risk his job over drugs, and did not own the shorts in question, the officers concluded that the marijuana was his. They read Ibanez his *Miranda* warnings and arrested him for possession of marijuana.[5]

Ibanez was charged with possession of less than two ounces of marijuana. *See* Tex. Health & Safety Code Ann. § 481.121. In a pretrial motion, Ibanez moved to suppress all evidence obtained as a result of the traffic stop on the grounds that his detention and arrest were improper under the federal and Texas constitutions and the Texas Code of Criminal Procedure. The trial court held a hearing at which Officer LaRocque testified and the video recording of the stop was admitted as evidence. After the hearing, the trial court granted Ibanez's motion. The State did not request, and

confirm or rule out either account of the arrest. However, the discovery of Reyes's true identity clearly occurs after approximately one hour and fifteen minutes.

[5] *See Miranda v. Arizona*, 384 U.S. 436, 471 (1966).

4

the trial court did not make, explicit findings of fact or conclusions of law.[6] The State now appeals the order granting the motion to suppress.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion, using a bifurcated standard. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's determination of facts, and we review de novo the trial court's application of the law. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Guzman*, 955 S.W.2d at 88–89. We review de novo whether the totality of circumstances support a reasonable suspicion justifying a suspect's prolonged detention by law enforcement. *Crain v. State*, 315 S.W.3d 43, 48–49 (Tex. Crim. App. 2010).

Where the trial court did not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported in the record. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006). The trial court is the sole judge of the credibility of the witnesses and their testimony. *Maxwell*, 73 S.W.3d at 281. Where the record does not reflect the trial court's theory for granting the motion to suppress evidence, the ruling must be affirmed if it is reasonably supported by the record and can be upheld on any valid theory of law applicable to the case. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

---

[6] *See State v. Ross*, 32 S.W.3d 853, 858 (Tex. Crim. App. 2000) (recommending that parties not prevailing on motion to suppress attempt to get rationale for trial court's ruling on record through either verbal explanation at hearing or express findings of fact or conclusions of law).

5

**DISCUSSION**

The Fourth Amendment protects individuals against unreasonable searches and seizures. *Valtierra*, 310 S.W.3d at 448. Violation of a constitutional provision in obtaining evidence requires suppression of that evidence. *Polk v. State*, 738 S.W.2d 274, 276 (Tex. Crim. App. 1987). In this appeal, the State contends that the trial court erred in granting the motion to suppress because the seizure of evidence following the traffic stop of Ibanez and Reyes comported with constitutional requirements.

A routine traffic stop is a detention and must be reasonable under both the federal and Texas constitutions. *See Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). To be reasonable, a traffic stop must be temporary and last no longer than necessary to effectuate its original purpose. *Ohio v. Robinette*, 519 U.S. 33, 50 (1996); *see also Arizona v. Johnson*, 555 U.S. 323, 334 (2009); *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). Once the reason for the traffic stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 242 (quoting *Robinette*, 519 U.S. at 41 (Ginsburg, J., concurring)). Rather, officers must have a reasonable suspicion of criminal activity in order to continue detaining an individual. *Terry*, 392 U.S. at 19–20; *Wolf v. State*, 137 S.W.3d 797, 802 (Tex. App.—Waco 2004, no pet.). The burden is on the State to elicit testimony showing sufficient facts to create a reasonable suspicion. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

In the instant case, at the hearing on Ibanez's motion to suppress, the State stipulated that the police had acted without a warrant. Accordingly, the burden was on the State to prove to the trial court that the seizure at issue was reasonable. *See State v. Robinson*, 334 S.W.3d 776,

778–79 (Tex. Crim. App. 2011) ("A defendant who alleges a violation of the Fourth Amendment has the burden of producing evidence that rebuts the presumption of proper police conduct. He may carry this burden by establishing that the seizure occurred without a warrant. The burden then shifts to the State to prove the reasonableness of the seizure."). The State contends that it met this burden by proving that the initial traffic stop was valid and that officers developed a reasonable suspicion justifying any prolonged detention of Ibanez. The State also stresses that Ibanez consented to the vehicle search that resulted in the troopers finding the contraband.

**Initial traffic stop**

We first address whether the initial traffic stop was valid. An officer may initiate a traffic stop if he reasonably suspects that the driver has violated the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Here, LaRocque testified that he stopped Ibanez and Reyes because the trailer on their truck had an inoperative taillight, a fact that Ibanez did not challenge at the suppression hearing. Thus, based on the undisputed evidence, we conclude that there was adequate justification for the officers to initiate the traffic stop. The issue presented in this case is therefore whether Ibanez was lawfully detained upon the conclusion of the traffic stop, that is, whether a reasonable suspicion of criminal activity justified any prolonged detention of Ibanez. To make this determination, we must first determine the time at which the purpose of the traffic stop was effectuated and any prolonged detention of Ibanez began. *See Terry*, 392 U.S. at 19–20 (stating that whether suspicion is reasonable depends on circumstances at moment detention began).

On a routine traffic stop, an officer may inquire into matters unrelated to the stop as long as the stop is not unreasonably extended. *See Branch v. State*, 335 S.W.3d 893, 900 (Tex.

7

App.—Austin 2011, pet. ref'd) (citing *Parker v. State*, 297 S.W.3d 803, 809 (Tex. App.—Eastland 2009, pet. ref'd)). Police officers may also request certain information from a driver, such as his license and car registration, and may conduct a computer check on that information. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). It is only after this computer check is completed, and the officer knows that the driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic stop is fully resolved. *Id.* Police cannot prolong the stop beyond the time reasonably required to accomplish its purpose simply to give them time to bring in a drug dog. *State v. Weaver*, 349 S.W.3d 521, 529 (Tex. Crim. App. 2011) (citing *Illinois v. Caballes*, 543 U.S. 405, 409 (2005)).

Here, the video recording shows that the troopers discovered Reyes's true identity and his outstanding warrant approximately an hour and fifteen minutes after the initiation of the traffic stop. Certainly, by that point, Reyes was under arrest and the troopers' investigation into his identity was therefore complete. In addition, the officers had completed their search of the vehicle. However, the officers had not yet conducted the canine sniff that yielded the evidence at issue in Ibanez's motion to suppress. In order for the canine sniff to be conducted, the officers continued to detain Ibanez for another thirty minutes.

Consequently, viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the record supports an implied finding by the trial court that the traffic stop concluded upon the identification and arrest of Reyes. Thus, the additional time it took for the dog to arrive prolonged the detention beyond the time reasonably required to complete the mission of the stop. *Cf. Branch*, 335 S.W.3d at 901 (citing *Caballes*, 543 U.S. at 407–09) ("Given the evidence

8

regarding the initial traffic stop and the arrival of the drug-detection dog . . . we conclude that the record supports an implied finding by the trial court that the time it took for the dog to arrive did not prolong the initial stop beyond the time reasonably required to complete the mission of the stop.").

**Reasonable suspicion**

Prolonging a detention beyond the conclusion of a routine traffic stop is a violation of the Fourth Amendment unless an officer has developed a reasonable suspicion of illegal activity that would justify the extended detention. *Wolf*, 137 S.W.3d 802 (citing *Terry*, 392 U.S. at 19–20). Such suspicion must be based on more than a mere hunch or non-specific suspicion of criminal activity. *Tanner v. State*, 228 S.W.3d 852, 855 (Tex. App.—Austin 2007, no pet.). Rather, a reasonable suspicion exists if an officer has specific and articulable facts that, taken together with rational inferences from those facts, would lead the officer to reasonably suspect that a particular person has engaged or soon will engage in criminal activity. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008).

The burden is on the State to prove that a reasonable suspicion justified the prolonged detention of Ibanez. *See Robinson*, 334 S.W.3d at 778–79. The State argues that a reasonable suspicion arose when LaRocque began to suspect both Ibanez and Reyes of drug smuggling. LaRocque testified that he developed this suspicion due to the location of the men on northbound IH-35, a known drug artery, far from their stated course; the registration of the truck to someone besides Ibanez; and the false identifications given by Reyes.

Whether Officer LaRocque's suspicion was reasonable depends on the facts available when the officers identified Reyes and therefore concluded the traffic stop. *See Wolf*, 137 S.W.3d

9

at 802 (citing *Terry*, 392 U.S. at 21–22) ("On appeal, we review the reasonableness of the detention from the same perspective as the officer: using an objective standard, we ask whether the facts available at the moment of detention would warrant a man of reasonable caution in the belief that the action taken was appropriate."). At the conclusion of the traffic stop, several relevant facts were known to the officers. First, Ibanez and Reyes had been driving on a known drug artery, twenty to thirty miles from their stated route. Second, Ibanez was not the registered owner of the truck, but he claimed it belonged to his sister-in-law, and a computer check showed it was registered to a woman sharing Ibanez's last name. Third, there were no reports of the truck or trailer being stolen. Fourth, Ibanez had been able to identify himself using a valid Texas driver's license. Fifth, a thorough search of the truck had revealed nothing illicit. And finally, after multiple false identifications, Reyes had provided an accurate identity and admitted he was trying to conceal an outstanding warrant that the officers confirmed he did have.

These fact developments essentially resolved the question of the truck's registration, explained the deceptive behavior of Reyes, and revealed that the truck contained no drugs that could be discovered by a manual search. In addition, Ibanez had been cooperative and forthcoming, and there had been no new events since the conclusion of the troopers' search that increased the likelihood that Ibanez was smuggling drugs. Based on the totality of the circumstances, we hold that by the hour-and-fifteen-minute mark when the prolonged detention of Ibanez began, the officers did not have a reasonable suspicion of criminal activity on Ibanez's part. Consequently, there was no justification for them to continue detaining Ibanez for another thirty minutes until the arrival of the canine unit.

10

**Consent to search**

Finally, we address the State's assertion that Ibanez gave consent for the officers' search of the truck. Typically, a sniff of the exterior of a vehicle by a trained canine is not a search within the meaning of the Fourth Amendment. *Weaver*, 349 S.W.3d at 529. Therefore, it is generally not necessary for law enforcement officers to obtain consent to conduct a canine inspection. *Id.* However, where a prolonged detention would otherwise be unreasonable for lack of a reasonable suspicion, as it would here, the detention may be justified by the suspect's valid consent to a search. *See Spight v. State*, 76 S.W.3d 761, 767–68 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Specifically, a prolonged detention may be justified when it is necessary to effectuate a search to which the suspect validly consents. *See Kelly v. State*, 331 S.W.3d 541, 550 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (affirming denial of motion to suppress where consent was obtained during lawful traffic stop because "[a]ny further detention was to effectuate the search pursuant to consent and needed no other justification"); *Magana v. State*, 177 S.W.3d 670, 674 (Tex. App.—Houston 2005, no pet.) (asserting that suppression of evidence was unreasonable on same grounds). Thus, because Ibanez consented to a search of the truck in this case, we must determine whether his detention on conclusion of the traffic stop was necessary to effectuate the search to which he consented. If so, his prolonged detention was justified despite the lack of reasonable suspicion.

At the suppression hearing, the defense argued that the State's evidence did not establish that Ibanez's consent to a search of the truck was valid. It is well settled that before consent to a search is deemed effective, the prosecution must prove by clear and convincing evidence that

11

the consent was freely and voluntarily given. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 2005). The burden requires the prosecution to show that the consent given was positive and unequivocal and that there was not duress or coercion, actual or implied. *Id.* (citing *Allen v. State*, 487 S.W.2d 120 (Tex. Crim. App. 1972)). However, we need not determine voluntariness in this case, because even assuming that Ibanez's consent was voluntary, the trial court could have reasonably found that Ibanez's prolonged detention was not necessary to effectuate the search. *See Magana*, 177 S.W.3d at 674.

Here, approximately twenty minutes after initiating a lawful traffic stop of Ibanez's truck, troopers obtained his consent to search the truck. They conducted a thorough search of the vehicle, ostensibly seeking evidence that Ibanez and his companion were involved in drug trafficking. Nothing incriminating was found during the search, and in the meantime, the troopers learned that Ibanez had a verified connection to the owner of the truck and no outstanding warrants and that Reyes had misidentified himself in order to conceal an outstanding warrant for evading arrest. Nevertheless, after the search was complete, the troopers further detained Ibanez in order to call in a canine unit. Ibanez was required to wait for at least thirty additional minutes for the unit to arrive, at which time a canine sniff of the vehicle finally revealed the marijuana on which basis he was arrested. There is no evidence that Ibanez consented to this additional delay.

Given this evidence, the trial court could have reasonably determined that the delay and ultimate canine search imposed on Ibanez were not necessary to effectuate the search to which he consented. Consequently, the troopers were not excused from the requirement of a reasonable suspicion to support the prolonged detention of Ibanez. *See Kelly*, 331 S.W.3d at 550; *Magana*,

177 S.W.3d at 674.  As discussed above, the troopers had no such suspicion and were therefore unjustified in continuing to detain Ibanez. *See generally Caballes*, 543 U.S. at 409; *Weaver*, 349 S.W.3d at 529 (noting that "in *Caballes*, Justice Stevens emphasized that the police cannot prolong a traffic stop beyond the time reasonably required to accomplish its purpose simply to give them time to bring in a drug dog.").

For the above reasons, we cannot agree that Ibanez's earlier consent validated the delayed canine sniff of his vehicle.  Because the prolonged detention of Ibanez was not supported by a reasonable suspicion and was not otherwise justified by his consent to search, we find no error in the trial court's decision to grant Ibanez's motion to suppress.  We overrule the State's sole issue on appeal.

## CONCLUSION

We affirm the trial court's order.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson;
  Dissenting Opinion by Justice Pemberton

Affirmed

Filed:   July 6, 2012

Do Not Publish

13