**Affirmed; Opinion Filed February 8, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-16-01325-CR

**DONALD GRIGGS SCOTT, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F14-76100-M**

# MEMORANDUM OPINION

Before Justices Bridges, Myers, and Schenck
Opinion by Justice Myers

A jury convicted appellant Donald Griggs Scott of murder and punishment was assessed at life imprisonment. In two issues, appellant contends the trial court erred by admitting an exhibit and that the trial court should not have overruled the defense's objection to the State's jury argument. We affirm.

DISCUSSION

### 1. State's Exhibit 49

In his first issue, appellant argues the trial court erred by admitting certain writings in State's exhibit 49, a handwritten notebook found among appellant's possessions.

Appellant was indicted for murder. The indictment alleged that on or about July 27, 2014, appellant:

[D]id unlawfully then and there intentionally and knowingly cause the death of

JERRY LEE CAMPBELL, an individual, hereinafter called deceased, by STABBING THE DECEASED WITH A KNIFE, A DEADLY WEAPON, AND A SHARP OBJECT, a deadly weapon,

And further did unlawfully then and there intend to cause serious bodily injury to JERRY LEE CAMPBELL, hereinafter called deceased, and did then and there commit an act clearly dangerous to human life, to-wit: by STABBING THE DECEASED WITH A KNIFE, A DEADLY WEAPON, AND A SHARP OBJECT, a deadly weapon, and did thereby cause the death of JERRY LEE CAMPBELL, an individual[.]

*See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2).

The evidence at trial showed that the victim, Campbell, was homeless and living in the parking lot of a Dallas area business, the "Hola Amigo" convenience store. Campbell was allowed to park his Bronco vehicle, which contained all of his possessions, in the parking lot and camp there in return for keeping the area free of trouble-makers and assisting with occasional tasks.

On July 26, 2014, appellant, who was also homeless, refused to leave the parking lot and became belligerent when an employee asked him to leave. The employee told appellant Campbell was responsible for keeping the parking lot clear and that if Campbell did not want appellant around, he would have to leave. Appellant "got very upset" and replied that he was sick and tired of "rednecks" telling him what to do all of the time, and that he hated them. The situation escalated and appellant tried to spray mace on Campbell, who struck appellant in the head with a pipe before the police arrived. Neither party was charged; appellant left the area.

The following day, July 27, 2014, Campbell was found dead, lying face down in some dirt near the chase lounge where he usually slept. He had multiple cut and stab wounds—a total of "42 specific sharp-force injuries," according to the medical examiner. Appellant's medical records, admitted into evidence, show he was treated during the early morning hours of July 27th at Presbyterian Hospital for a "deep laceration" to the palm of his right hand between the second and third fingers. The records stated that appellant was "covered with dried blood in his hair, on his face, and both arms and hands," that he had "no active bleeding," and that he was "agitated and

upset" and denied "taking any alcohol or drugs tonight." Appellant claimed, according to the records, that he had been "'attacked by a drunk white trash guy with a big pole' outside a convenience store."

Surveillance camera footage from the Hola Amigo during July 26 and 27, 2014 was admitted. In the surveillance video, appellant can be seen entering the store at 2:11 p.m. on July 26th. He is wearing a backpack. That same person can be seen walking across the parking lot of the convenience store at 2:15 p.m. A person wearing a similar backpack can be seen in the parking lot of the convenience store at around 12:45 a.m. on July 27th, near Campbell's camping area. The surveillance video shows some sort of struggle taking place and what appears to be an arm moving up and down in a stabbing-like motion. The video also shows the individual wearing the backpack leaving the parking lot while holding a knife. The time on the surveillance video is 12:51 a.m. A person who appears to be that same individual can be seen walking back into camera view towards the camp site at 1:13 a.m., no longer wearing a backpack. He washes his hands and sits in a chair, and then walks out of camera view at 1:14 a.m. Hospital surveillance video, which was likewise admitted, shows appellant entering the hospital at 1:52 a.m. on July 27th wearing a backpack similar to the one seen in the surveillance video from the convenience store.

The evidence included blood samples taken from the crime scene and appellant's possessions, which were analyzed. A blood sample recovered from the parking lot was a match to appellant's DNA, and a sample from a cooler lid was a match with Campbell's DNA. A mixed sample from the front strap of appellant's backpack matched both Campbell's and appellant's DNA. The evidence also included a knife and a notebook, found among appellant's possessions. The notebook was a 100 sheet "wide rule" "composition book" with the date "7/27/2014" and the name "Tyeer Scott," which according to Detective Brian Tabor of the Dallas Police Department, the lead detective in this case, was appellant's preferred name, written on the cover. Blood stains

found in the notebook were a match for appellant's DNA. It contains the following entries:



Appellant, who testified in his defense, claimed he was minding his own business and that he sprayed Campbell with mace only because he brandished the pipe in a threatening manner. He

–4–

testified that he returned to the parking lot to look for his pepper spray, and that Campbell was the aggressor and had the knife. Appellant also testified that he stabbed Campbell after they fell to the ground and were struggling because he feared for his safety. Appellant admitted the writings in the notebook, State's exhibit 49, were his and that they were written after he stabbed Campbell, but he argued they were political philosophy and not an admission of guilt.

The admissibility of the writings in the notebook was addressed in a hearing held outside of the jury's presence, and the defense objected based on relevance and rule 403. During that hearing, defense counsel argued that the notebook was largely empty and had only three pages of writing, one of which contained a "schematic drawing of something that looked electrical," and several pages of "rambling thoughts dealing with murder, nuclear war, things along those lines." Counsel acknowledged the notebook had appellant's name on it and the writings "may very well have been" from appellant—he was not arguing that point. But he argued there was no relevance under rule 401 and that, under rule 403, it was more prejudicial than probative because there was nothing in the notebook "that says he did anything." Moreover, aside from the date on the cover, "we really didn't know when it was written" and there are "a lot of things that the jury can speculate and guess at." Defense counsel emphasized that rule 403 was his primary objection and he argued that the jury was "going to look at the word murder and what have you, and they are going to start making assumptions." The State responded by pointing out that the notebook had appellant's name on the cover and the date of the murder, and that "the first two pages are the defendant writing about the topic of murder." It was hard, the State argued, "to imagine something more relevant." The State maintained that the bulk of the defense's argument went to the weight of the evidence, not its admissibility, and that defense counsel was free to argue to the jury that they should not take anything of value from the evidence. The State also argued that appellant's state of mind was "a very relevant point in this case." Defense counsel replied that he was not objecting

to the notebook, only "the words themselves," and his concern was that the State was asking the jury to speculate. He added that the notebook had no probative value unless the State thought that "nuclear war had something to do with what happened that night." The trial court overruled the objection and found the notebook was relevant and that its admission did not "outweigh the prejudice." Defense counsel requested and received a running objection. In the presence of the jury, when the defense was asked if there was an objection to State's exhibit 49, defense counsel stated, "Yes, Your Honor, what we had already talked about."

Detective Brian Tabor testified that he believed the notebook was significant because it had appellant's preferred name, "Tyeer Scott," and the date of the murder, "7/27/2014," or July 27, 2014, written on the cover. Tabor read from the notebook:

> [TABOR]: Well, we have at the very top, it has (Reading): RAM or ROCK. Rock against murder. And then get Dodge in. Can't make out that one. Code. Can't make out that word. Then it is goals, reduce the murder in the world. Then we have DEM. Murder is simply the, can't make out that word, killing of people. Nuclear weapons are designed to murder, noncombative. And then possession of —if you can move it up, I can't read the bottom part.
>
> [STATE]: Yes, sir.
>
> [TABOR]: Possession of, something weapon. And I can't make out the word right here. By any state is state terrorism. We must eliminate all N. weapons on earth.
>
> [STATE]: And then the next page?
>
> [TABOR]: Capital, I can't make out the second word, an act of vengeance by the State, I guess it is capital PUN, punishment, act of vengeance by the State, and is a form of state terror, we must eliminate GEN., must of—if you can help me, I can't make out that word.
>
> [STATE]: It could be children, but your guess is going to be as good as mine, Detective?
>
> [TABOR]: Yeah. Cause of, MU, can't make out that word, violence and murder, world peace is the goal.

A trial court's admission of evidence is reviewed under an abuse of discretion standard. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 1991). There is no abuse of discretion if

the trial court's ruling is within the "zone of reasonable disagreement." *Id*.

Rule 401 defines relevant evidence as evidence that has a tendency to make a fact of consequence to the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. The fact of consequence to appellant's trial was whether he acted in self-defense. The trial court could have concluded that appellant's writings discussing "murder" after the death of Campbell, and dated the day he died, were relevant to appellant's state of mind and to his claim of self-defense. The court did not abuse its discretion by concluding the evidence was relevant.

As for rule 403, the court is presumed to have engaged in the required balancing test once rule 403 is invoked. *See Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997) (citing *Santellan v. State*, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997)). Rule 403 favors admissibility and "the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991); *see also De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

Rule 403 authorizes a trial court to exclude evidence that is otherwise relevant if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. When determining if admission would create unfair prejudice, the court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). As the Texas Court of Criminal Appeals has noted, "these factors may well blend together in practice." *Id*. at 642. "[Rule 403] envisions exclusion of evidence only when there is a 'clear disparity between the degree of

prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568–69 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).

Regarding the rule 403 factors, the first two favor admissibility. "Probative value" means more than simply relevance; it "refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Gigliobianco*, 210 S.W.3d at 641. In this case, appellant admitted that he wrote the entries in the notebook after the stabbing took place, and the notebook itself is dated the same day Campbell was killed. The court could have concluded the State had a need for the complained-of evidence because it showed appellant's state of mind at the time of the stabbing. As for the third factor, it "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*. The trial court could have concluded the writings in the notebook did not have such a tendency because those writings related to the offense charged and arguably contradicted the defense's theory that appellant acted in self-defense. The fourth factor "refers to a tendency to confuse or distract the jury from the main issues in the case." *Id*. "Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues." *Id*. The writings in the notebook addressed the issue of appellant's intent and his state of mind at the time of the stabbing. The evidence did not take an inordinate amount of time at trial to develop or present. This factor also favors admissibility. The fifth factor "refers to a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds." *Id*. "For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Id*. This factor similarly favors admissibility. Appellant argued that he killed Campbell in self-defense, and the State introduced

significant evidence to the contrary. We find no basis for concluding the writings in the notebook would have misled the jury or created a prejudicial effect. The final factor concerns "the efficiency of the trial proceeding rather than the threat of an inaccurate decision." *Id.* The trial court could have concluded the introduction of the writings in the notebook would not consume an inordinate amount of time or be repetitive of evidence that had already been admitted. Those writings were, according to appellant's own admission, statements made by him near the time of the stabbing, and they arguably undermined his claim that he acted in self-defense when he stabbed Campbell. Thus, this factor likewise weighs in favor of admission. For all of these reasons, we conclude the trial court did not abuse its discretion when it overruled appellant's rule 403 objection. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42.

Furthermore, were we to conclude the trial court erred by admitting the writings in the notebook, the error, if any, was harmless. Because appellant complains about the admission of evidence, the proper standard of review is for non-constitutional error as provided in rule 44.2(b), which requires that any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). A substantial right is affected when the error had a "substantial and injurious" effect or influence in determining the jury's verdict or when the error leaves one in grave doubt about whether it had such an effect. *Montez v. State*, 975 S.W.2d 370, 373 (Tex. App.—Dallas 1998, no pet.). "A substantial right is not affected and the error is harmless if, after reviewing the entire record, the appellate court determines that the error did not influence, or had only a slight influence, on the trial outcome." *Id.* Under rule 44.2(b), unless the error had a substantial and injurious effect or influence in determining the verdict, the error will not constitute reversible error. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). When conducting a harm analysis under rule 44.2(b), everything in the record, including evidence of a defendant's guilt, is a factor to be

considered. *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). In this case, review of the record shows that the State introduced substantial evidence of guilt. The surveillance videos, the statements made to the hospital staff, and the blood evidence alone are sufficient to find appellant guilty. Therefore, any error in admitting the writings in the notebook was harmless. We overrule appellant's first issue.

## 2. Jury Argument

In his second issue, appellant contends the trial court erred by overruling his objection to the State's jury argument "attacking appellant over the shoulders of his defense counsel." The State argues no error was preserved or, alternatively, the trial court did not abuse its discretion.

During closing argument at the guilt/innocence stage of trial, defense counsel argued the State had not presented "one shred of evidence" that refuted appellant's self-defense claim, and then said the following:

> The other thing about self-defense, when someone is acquitted on the self-defense case, it doesn't mean that what they did was right. It doesn't mean Mr. Campbell deserved to die. It doesn't mean that [appellant] was a hero. It doesn't mean that it was a different way that he could have handled the situation. All it means is that at the time he did what he thought he had to do. Right or wrong.

> The job of the jury is not to be an armchair for Monday morning quarterback. You look at that snapshot of time. You put yourself in the defendant's position and you say, was it reasonable. Maybe it is not what you would have done, but is it reasonable. And it doesn't mean that you should feel good about it. It just means that's what happened.

> Nothing is going to bring Mr. Campbell back. But we still got to follow the law. And the law is pretty clear.

> There is also another issue in the law. One of the things that I think [the State] asked [appellant] when he was sitting down here talking to you, why didn't he leave. He explained to you, I didn't leave because, number one, we were rolling around on the ground and didn't have an opportunity to; and number two, I am not quick on my feet, I have neuropathy. And now he is else paralyzed [sic] because of a spine injury. But to answer that question, the law doesn't require that. It says right here, the finder of facts may not consider whether the actor failed to retreat. It used to be a law years ago, and sometimes people still bring it up. But you can't go back in the jury room and even consider that someone failed to leave. Because

once a situation starts, it has started.

> And I suspect the State is going to get up and say 42 cuts, 42 stab wounds. And I agree with them. Forty-two is a big number. It doesn't matter if it is one or a hundred. Because once it starts, you are allowed to defend yourself until it is over. Once it begins, there is no duty to leave. There is no duty to stop at number ten. It is just once it starts, the law gives [appellant], and each of you, the ability to defend yourself until the danger is over. And if that means because the guy runs away, great. If it means that the guy parish, the law gives you that ability. You can't consider those things.

The following took place during the final portion of the State's closing argument:

> [STATE]: What Defense Counsel got up here and talked to you about self-defense [sic], that's simply not how self-defense works. Self-defense is not something where you can stab a man 42 times, be interviewed by the police, and never brought up to the police. And then several years later when you have talked to your lawyer, for the first time say self-defense. That is not how self-defense works.

> If that's how self-defense worked, there would be no convicted murderers in this court. There would be none of them. Every single person who murdered somebody like [appellant] Scott, can get here and say you weren't there, you don't know how I was feeling at the time, I was scared. It's self-defense. You have to let me go. That's how Defense Attorney's application of that law would work in reality.

> [DEFENSE COUNSEL]: Judge, I have got to object. The law is the law. It is not my application. I explained the law for them. And for him to try to change the law is an improper argument.

> THE COURT: Overruled.

"To preserve error committed during jury argument, an appellant must object until receiving an adverse ruling from the court." *Dickerson v. State*, 866 S.W.2d 696, 698 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). "An exception to this rule exists when the jury argument is so prejudicial that an instruction to disregard the argument could not cure the harm." *Harris v. State*, 784 S.W.2d 5, 12 (Tex. Crim. App. 1989). "The complaining party bears the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale." *Pena v. State*, 285 S.W.3d 459, 463–64 (Tex. Crim. App. 2009). In order for a party's objection to be preserved, the complaint on appeal must comport with the one made at trial. *Id.* We make this determination by considering

"the context in which the complaint was made and the parties' shared understanding at that time." *Id.* In this case, appellant failed to preserve error because defense counsel, at trial, complained of the State's presentation of the law, not the attack on defense counsel asserted in appellant's brief.

Additionally, even if error was preserved, appellant points to nothing in the record rising to the level of improper jury argument. We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Proper jury arguments generally fall within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to opposing counsel's argument, and (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). When examining challenges to jury argument, we consider the remark in the context in which it appears. *Jackson v. State*, 17 S.W.3d 664, 675 (Tex. Crim. App. 2000) (citing *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988)).

The State may not use closing argument to strike at a defendant over the shoulders of his counsel or accuse counsel of bad faith. *Fuentes v. State*, 664 S.W.2d 333, 335 (Tex. Crim. App. 1984); *Magana v. State*, 177 S.W.3d 670, 674 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A prosecutor risks improperly striking at a defendant over the shoulders of defense counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character. *Magana*, 177 S.W.3d at 674. No "one fixed rule emerges to determine what is improper jury argument," but we look for argument referring to defense counsel personally or argument impugning opposing counsel's character. *Id.* (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.1998)). "In its most egregious form, this kind of argument may involve accusations of manufactured evidence, or an attempt to contrast the ethical obligations of prosecutors and defense attorneys." *Mosley*, 983 S.W.2d at 258.

Comments that facially appear aimed at defense counsel but actually strike at his argument

–12–

may be appropriate because the State may properly respond when the defense invites argument. *See Swarb v. State*, 125 S.W.3d 672, 686 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Howard v. State*, 896 S.W.2d 401, 405 (Tex. App.—Amarillo 1995, writ ref'd); *Ford v. State*, No. 05–04–00253–CR, 2005 WL 957917, at *6 (Tex. App.—Dallas April 27, 2005, no pet.) (not designated for publication). The State in this case did not allude to or imply any improper behavior on the part of defense counsel—it attacked appellant's credibility and his argument on self-defense. While on the stand, appellant testified that he lied to Detective Tabor when he initially denied having anything to do with Campbell's death. Appellant testified that because he was now under oath he had to tell the truth regarding self-defense, and he admitted to stabbing Campbell. In his jury argument, defense counsel attempted to address the number of wounds inflicted on the victim, suggesting forty-two wounds were permissible in the context of self-defense. The trial court could have concluded that the objected-to portion of the State's jury argument was nothing more than a passing comment on defense counsel's application of the law and a response to his argument on self-defense, and that it did not attack defense counsel personally or impugn his integrity. Thus, the trial court did not abuse its discretion by overruling the defense's objection. We overrule appellant's second issue.

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. 47
161325F.U05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DONALD GRIGGS SCOTT, Appellant

No. 05-16-01325-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F14-76100-M.
Opinion delivered by Justice Myers.
Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 8th day of February, 2018.