**Affirmed and Opinion filed November 29, 2018.**



In The

# Fourteenth Court of Appeals

NO. 14-17-00963-CR
NO. 14-17-00965-CR

**DONNA LYNN MARTIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court
Chambers County, Texas
Trial Court Cause Nos. 33119 & 33120**

## O P I N I O N

Appellant was a passenger in a vehicle that a deputy stopped pursuant to an alleged traffic violation. Roughly ten minutes into the stop, the driver admitted that she had purchased marijuana with appellant and that appellant was in possession of the marijuana. A few minutes later, appellant admitted that the marijuana was in her purse. The deputy searched the purse and found several controlled substances.

Appellant filed a motion to suppress evidence discovered as a result of the traffic stop, and the trial court denied the motion. Appellant pleaded nolo contendere to misdemeanor counts of possessing marijuana and possessing a controlled substance in penalty group three, i.e., Xanax. The court sentenced appellant to seven days' confinement and a $600 fine.

In her sole issue on appeal, appellant challenges the trial court's denial of the motion to suppress. Specifically, appellant contends that (1) the initial stop of the vehicle was illegal; (2) the stop was improperly prolonged; and (3) the subsequent search of appellant's purse was illegal.

We affirm.

## I.     Legal Principles and Standard of Review

The Fourth Amendment prohibits unreasonable searches and seizures. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). A search and seizure must be justified at its inception and reasonably related in scope to the circumstances that justified the seizure in the first place. *Id.* A police officer is justified in stopping a vehicle if the officer has reasonable suspicion to believe that a traffic violation has occurred. *Id.* A traffic stop made for the purpose of investigating a traffic violation must be reasonably related to that purpose and may not be prolonged beyond the time to complete the tasks associated with the traffic stop. *Id.*

During a traffic stop, an officer may request the driver's license, vehicle registration, and proof of insurance, and the officer may run a computer check on that information. *Id.* An officer may ask drivers and passengers about matters unrelated to the purpose of the stop so long as the questioning does not measurably extend the duration of the stop. *Id.*; *see also Rodriguez v. United States*, 135 S. Ct. 1609, 1614–15 (2015).

There is no per se rule that an officer must immediately conduct a computer check on the driver's information before questioning the occupants of the vehicle. *Lerma*, 543 S.W.3d at 190–91. An officer's authority for the stop ends when tasks related to the traffic infraction are, or reasonably should have been, completed. *Rodriguez*, 135 S. Ct. at 1614; *see also Lerma*, 543 S.W.3d at 191. However, if an officer develops reasonable suspicion that an occupant of a vehicle is involved in criminal activity, the officer may continue questioning the person regardless of whether the tasks related to the traffic stop have come to an end. *See Lerma*, 543 S.W.3d at 191; *see also Rodriguez,* 135 S. Ct. at 1615.

Reasonable suspicion exists if an officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This is an objective standard that disregards the subjective intent of the officer. *Id.*

If a defendant shows that a search or seizure occurred without a warrant, then the burden shifts to the State to prove that the search or seizure was conducted pursuant to a warrant or was otherwise reasonable. *Id.* at 492. When reviewing a trial court's ruling on a motion to suppress, we give almost complete deference to the trial court in determining historical facts. *Lerma*, 543 S.W.3d at 190. When the trial court does not make explicit findings of fact, as here, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings that are supported by the record. *Id.* We review do novo whether the facts are sufficient to give rise to reasonable suspicion. *Id.* And, we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492–93. We will sustain a trial court's ruling if it is correct under any applicable theory of law. *Lerma*, 543 S.W.2d at 190.

## II. Traffic Stop Complaint Not Preserved

Appellant first complains that the trial court erred by denying the motion to suppress because the traffic stop was illegal at its inception. The State contends that appellant failed to preserve this argument for review. We agree with the State.

To preserve an issue for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. *Penton v. State*, 489 S.W.3d 578, 580 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *see* Tex. R. App. P. 33.1(a). The appellate complaint must comport with the specific complaint that the appellant timely lodged in the trial court. *Penton*, 489 S.W.3d at 580. The appellant must have conveyed to the trial court the particular complaint raised on appeal, including the precise and proper application of law as well as the underlying rationale. *Id.*

Appellant did not complain in her written motion to suppress, nor at the hearing, that the stop was illegal. In fact, her counsel told the trial court that she was not challenging the stop: "I'm not contesting the stop of the vehicle because she doesn't have standing to contest. She was a passenger. She wasn't the driver."[1]

Under these circumstances, appellant has not preserved for appellate review the alleged illegality of the traffic stop. *See id.* at 579–81 (no error preserved for appellate complaint that the traffic stop was unlawful when the precise argument was not made to the trial court).

## III. Reasonable Suspicion to Extend the Detention

Appellant contends that the trial court erred by denying the motion to suppress because the deputy prolonged the traffic stop beyond the time necessary to complete

---

[1] *But see, e.g., Kothe v. State*, 152 S.W.3d 54, 61 & n.19 (Tex. Crim. App. 2004) (collecting cases and noting that passengers have standing to challenge a vehicle stop).

the stop, and the deputy lacked reasonable suspicion that any other crimes had been committed.

## A.    Suppression Hearing Evidence

At the suppression hearing, the evidence consisted solely of the deputy's testimony and the video recording from his dashcam. The deputy testified that he had been surveilling a house that his office had "known for narcotics," also described as a "drug house." He saw appellant and the driver go to the house. When they left, he followed them for about fifteen minutes before making the traffic stop. The deputy testified that he made the stop because the truck's license plate was not clearly legible from a distance of fifty feet. *See* Tex. Transp. Code § 547.322(f)(2).

The video recording shows that the deputy initially spent about a minute talking to the driver about the purpose for the stop and to ask for the driver's license, registration, and insurance. The driver did not have her license but knew her number, and the driver said the truck belonged to her grandmother. The deputy asked the driver to get out of the truck, and the deputy performed a pat down of the driver. The deputy briefly questioned the driver about where they were coming from, and the driver said they were coming from buying a lottery ticket. The deputy asked the driver to wait by the patrol car while the deputy spoke with appellant.

At about two minutes into the stop, the deputy approached the passenger side of the truck to speak with appellant. He asked her to get out of the truck to talk with him and provide her license. The deputy testified that he believed appellant was under the influence of alcohol or a narcotic because her eyes were red and dilated, she walked unsteadily, and her speech was slurred. The deputy also noted that appellant was avoiding eye contact and was "real clinched to her purse, holding on tight to it." The deputy testified, "At that point I—I felt there was some kind of narcotic activity going on."

5

The deputy asked appellant whether there was anything in the purse that could hurt him, like a knife or a gun. Appellant said, "No"—an answer the deputy would soon learn was a lie. The deputy asked her where she had been coming from, and she referred to "the store." At this point, the traffic stop had lasted about three and a half minutes.

The deputy spent the next three and a half minutes interrogating appellant. He told her that he had been following them, he knew that they had been into a house, he knew "what goes on there," and the driver had previously been arrested at the house. He asked appellant multiple times if they got anything from that house, if appellant had anything illegal on her, and whether she would consent to a search of her purse. He threatened to "call the dog" multiple times. She denied consent to search her purse but ultimately admitted that she had a knife in her purse. The deputy asked appellant to put her purse on the hood of the patrol car, and she complied.

By this point, the traffic stop had lasted about seven minutes. The deputy relayed the license number over his radio for a warrant check and then questioned the driver again. The driver maintained that they only went to a store and nowhere else, but her story unraveled as the deputy continued to question her. She admitted to driving "through" the area of the house. Then she admitted that she had been at the house, but it was appellant who went inside the house. Then the driver admitted that the driver went inside the house to buy "pot." She said she gave it to appellant. The driver said that she thought the pot was in appellant's purse. At about ten and a half minutes into the stop, the license checks on the driver and appellant came back "clear."

The deputy and another officer at the scene had a discussion for about a minute regarding what the deputy learned from talking with the driver and appellant. The deputy approached appellant and told her that the driver had said they bought some

pot. He asked her, "Is it in your purse?" She answered, "Yes." She offered to show him where it was, and she said it was "in the middle section, in that side pocket." The deputy began searching the purse at about thirteen minutes into the stop and found the marijuana and Xanax. The deputy formally arrested appellant and, ultimately, issued a written warning to the driver for the traffic violation.

## B. Analysis

The evidence discussed above shows that the deputy expeditiously questioned the driver and appellant and learned of facts giving rise to a reasonable suspicion that a crime had been or was being committed. Before the stop and within a few minutes of the traffic stop's inception, the deputy knew that (1) the truck was observed leaving a known drug house; (2) appellant appeared intoxicated with dilated pupils, slurred speech, and an unsteady walk; (3) appellant was avoiding eye contact and "clinched to her purse"; and (4) appellant and the driver both lied about where they had been coming from. These facts, all learned by the deputy less than four minutes into the traffic stop, gave rise to his reasonable suspicion that a crime involving narcotics had been or was being committed. *See Green v. State*, 256 S.W.3d 456, 462–63 (Tex. App.—Waco 2008, no pet.) (reasonable suspicion for continued detention during traffic stop because the officer had seen the vehicle parked in front of a known drug house where a person walked from the truck to the house, the driver got out of and walked away from his truck during the traffic stop, the driver initially did not comply with the officer's order to return to the truck, and the driver was nervous); *see also Lindsey v. State*, No. 01-15-00649-CR, 2016 WL 5851898, at *1, *3 (Tex. App.—Houston [1st Dist.] Oct. 6, 2016, pet. ref'd) (mem. op., not designated for publication) (reasonable suspicion based on the passenger's presence in a car in front of a known "crack house," his apparent nervousness, and the fact that the driver did not have a license or identification); *Gonzalez v. State*,

No. 04-14-00709-CR, 2016 WL 1689968, at \*1, \*5 (Tex. App.—San Antonio Apr. 27, 2016, pet. ref'd) (mem. op., not designated for publication) (reasonable suspicion to investigate narcotics activity during traffic stop because the driver had parked at a "suspected narcotics house," was very nervous, and had lied about his driving route); *Medellin v. State*, No. 02-10-00002-CR, 2011 WL 2119668, at \*1–2, \*5 (Tex. App.—Fort Worth May 26, 2011, no pet.) (mem. op., not designated for publication) (reasonable suspicion to prolong a detention for ten minutes for a canine sniff based on the driver's leaving a known drug house, extreme nervousness, lack of driver's license and proof of insurance, and allowing the officer to search the driver's person but to not search the truck); *cf. Sieffert v. State*, 290 S.W.3d 478, 485–88 (Tex. App.—Amarillo 2009, no pet.) (holding that a traffic stop was illegally prolonged without reasonable suspicion when the officer testified that the vehicle was driving slowly through a high-crime area and the driver was nervous; "Significantly, [the officer] did not observe any activity prior to the stop that would indicate that the SUV's occupants might have engaged in any illegal activity such as stopping near a known drug house or drug-dealing location . . . .").[2]

The deputy "diligently" questioned the driver and appellant, and "we cannot say that [the deputy] acted unreasonably by questioning Appellant before running the driver's license for a warrant check." *See Lerma*, 543 S.W.3d at 195 (traffic stop not illegally prolonged when officer questioned driver and passenger for five minutes before running warrant checks and learning that the passenger gave a false name). Soon after the deputy developed reasonable suspicion based on his initial questioning, he also learned that appellant had lied to him about possessing a knife in her purse. During additional brief questioning of the driver, about ten minutes

---

[2] We cite unpublished opinions for comparative and illustrative purposes, not for precedential value. *See Peyronel v. State*, 465 S.W.3d 650, 652 n.8 (Tex. Crim. App. 2015); *Roberson v. State*, 420 S.W.3d 832, 837 (Tex. Crim. App. 2013).

from the inception of the traffic stop, the deputy learned that the driver and appellant had engaged in a drug transaction and that the marijuana was in appellant's purse. The deputy was still actively involved in the traffic stop when he learned about the drug transaction, and he had not yet completed all aspects of the traffic stop. *See id.* at 194–95 (traffic stop not illegally prolonged when officer had not completed all tasks associated with traffic stop before the defendant fled from police about nine minutes from the inception of the stop).

Under the totality of the circumstances, the State has met its burden to show that the deputy developed reasonable suspicion to prolong the traffic stop and investigate the suspected narcotics activity. The trial court did not err by overruling the motion to suppress on the basis of an unreasonably prolonged detention.

## IV. Search Incident to Arrest

Appellant contends that the search of her purse was illegal because the State failed to prove an exception to the warrant requirement. In particular, appellant contends that the search-incident-to-arrest exception does not apply because appellant had not been arrested and no exigency justified searching the purse.

In the absence of a warrant, a search is reasonable only if it falls within a recognized exception to the warrant requirement. *State v. Villarreal*, 475 S.W.3d 784, 796 (Tex. Crim. App. 2014). One exception, which the State urged the trial court to apply in this case, is the search-incident-to-arrest exception. *See id.* Under this exception, a search must be substantially contemporaneous with the arrest and is confined to the area within the immediate control of the arrestee. *Id.* at 807. "If an officer has probable cause to arrest, a search incident to arrest is valid if conducted immediately before or after a formal arrest." *State v. Ford*, 537 S.W.3d 19, 24 (Tex. Crim. App. 2017).

The rationale for permitting a search incident to arrest "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Accordingly, a search that is "proximate in time and place to the arrest, that is limited to the person of the arrestee and the area within his reach is a permissible search incident to arrest." *Carrasco v. State*, 712 S.W.2d 120, 122–23 (Tex. Crim. App. 1986) (upholding search incident to arrest of the defendant's "shoulder bag" when the search occurred "at the scene of the arrest, in a public place, and within the appellant's reach"). A search incident to arrest extends to "objects immediately associated with the person of the arrestee or objects in an area within the control of the arrestee." *Id.* at 123. "The object need not be physically attached to the arrestee." *Id.* Thus, a search incident to arrest may include the arrestee's purse. *See id.* (discussing multiple cases upholding searches of the arrestee's purse); *see also Riley v. California*, 134 S. Ct. 2473, 2488 (2014) (noting that lower courts had "approved searches of a variety of personal items carried by an arrestee," including purses, wallets, and billfolds).

Appellant does not contend that the deputy lacked probable cause to arrest her. Indeed, the driver implicated appellant in the possession of marijuana, and appellant admitted to possessing it. *See Sandoval v. State*, 860 S.W.2d 255, 259 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (holding that the officer had probable cause to arrest the defendant for possession of marijuana when the defendant admitted to the offense in the officer's presence). Although the deputy did not formally arrest appellant until after the deputy located the marijuana inside the purse, the search was conducted immediately before the formal arrest. Accordingly, the search was "incident to arrest." *See Ford*, 537 S.W.3d at 24.

When appellant admitted that marijuana was in the purse, she was standing within a few feet of it. And, she had already admitted the purse contained a weapon.

Thus, both rationales for the search-incident-to-arrest exception applied—officer safety and evidence preservation. *See Carrasco*, 712 S.W.2d at 123 (upholding search incident to arrest of the defendant's shoulder bag because she was within a few feet of it and clearly could have obtained access to it; "Had the bag contained a weapon, the risk of appellant gaining access to it was no less dangerous once in the hands of the officer standing immediately adjacent to appellant than while it was in the actual grasp of the appellant.").

The trial court did not err by overruling the motion to suppress on the basis of an illegal search.

## V.     District Court Decision

Appellant notes in her brief that the deputy also discovered methamphetamine in the purse, and the State prosecuted her for the felony in district court. She allegedly filed a motion to suppress in the felony case, and the district court granted the motion after the trial court's ruling in this case. She contends, "The District Court's ruling on the same facts should provide guidance to this Court's decision." She cites no legal authority to support her argument, nor does her argument invoke any governing legal principles. Accordingly, it is waived. *Belle v. State*, 543 S.W.3d 871, 875 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (briefing waiver when the appellant cited no authority in support of his argument); *Wooten v. State*, 267 S.W.3d 289, 307 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (briefing waiver when the appellant had not presented any argument in support of the complaint and had not "addressed any of the governing legal principles or applied them to the facts").

We do not consider the impact, if any, of the district court's ruling.

## VI. Conclusion

Having overruled appellant's sole issue, we affirm the trial court's judgment.

/s/    Ken Wise
       Justice

Panel consists of Justices Donovan, Wise, and Jewell.
Publish — Tex. R. App. P. 47.2(b).