**Affirmed and Memorandum Opinion and Memorandum Concurring Opinion filed November 23, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00099-CR

---

## CHRISTOPHER LEE BROOKS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 421st District Court
Caldwell County, Texas
Trial Court Cause No. 19-065**

---

## MEMORANDUM OPINION

A jury found appellant Christopher Lee Brooks guilty of evading arrest or detention with a motor vehicle, a felony of the third degree. *See* Tex. Penal Code § 38.04(a), (b)(2)(A). Appellant pleaded true to two previous convictions for (1) unlawful possession of a firearm by a felon and (2) assault on a public servant. The jury assessed punishment at imprisonment for 33 years. *See id.* § 12.42(d). Raising two issues, appellant argues first that the trial court should have suppressed

evidence gathered during an illegally prolonged traffic stop. Second, appellant contends that the trial court should have ordered a mistrial because one or more jurors may have seen him in handcuffs as a guard escorted him past the jury room door.

We overrule appellant's first issue because the record shows that the arresting officer did not unduly prolong the traffic stop. We overrule appellant's second issue because he did not suffer prejudice sufficient to warrant a mistrial. Accordingly, we affirm the judgment.

## Background

Department of Public Safety Trooper Cristobal Flores stopped appellant on Interstate 10 in Caldwell County for a suspected illegal window tint.[1] As Trooper Flores stepped out of his patrol car, appellant exited his vehicle as well. Trooper Flores instructed appellant to return to his car. Trooper Flores then approached appellant's car on the passenger side, where the passenger window was lowered. Trooper Flores identified himself and told appellant the reason for the traffic stop. Appellant volunteered that he had received a written warning for the illegal window tint from a law enforcement officer in New Braunfels more than a month earlier.

Trooper Flores conducted a window meter test, which confirmed that appellant's window tinting allowed light transmission well below the allowable limit. While standing next to the passenger window, Trooper Flores observed a beverage cooler on the front passenger floorboard. Trooper Flores pointed to the cooler and asked appellant, "Can you do me a favor, can you open up that cooler?" Appellant opened the cooler, which contained several cans of beer. Trooper Flores

---

[1] *See* Tex. Transp. Code § 547.613 ("Restrictions on Windows").

2

then pointed to a cup in the center console and asked appellant, "May I see your cup?" Appellant handed the cup to Trooper Flores, who removed the lid and saw a small amount of liquid that "resembled an alcoholic beverage," likely beer.[2] Appellant denied drinking from the cup.

At this point, Trooper Flores told appellant that he had probable cause to search the vehicle, and he asked appellant to step out of the car. After appellant exited the vehicle, Trooper Flores attempted to place him in handcuffs for the duration of the search. Appellant was non-compliant. Trooper Flores asked appellant to place his hands behind his back. Appellant did not submit, and Trooper Flores instead saw appellant's hands "disappear into his shorts." Trooper Flores drew his service weapon but eventually re-holstered it once he saw that appellant was not holding a weapon. Appellant continued to refuse compliance with Trooper Flores's commands to place his hands behind his back, twisting away from Trooper Flores to keep his hands out of reach.

As appellant began to walk away, Trooper Flores instructed appellant to lay flat on the ground. Appellant initially went to his knees but then stood back up and walked toward his vehicle, where he reached into the car and withdrew a gun. Appellant very briefly pointed the gun in Trooper Flores's direction before throwing the firearm into the traffic lanes of Interstate 10.

Despite Trooper Flores's attempts to restrain appellant and prevent his re-entry into the car, appellant successfully gained control of his car and drove off. Trooper Flores pursued appellant for approximately fourteen to fifteen miles at speeds sometimes exceeding 130 miles per hour. Trooper Flores eventually apprehended appellant after appellant lost control of his vehicle.

---

[2] The cup also contained at least one dead cockroach.

The State charged appellant with aggravated assault on a public servant with a deadly weapon and evading arrest with a vehicle.[3]  Appellant pleaded not guilty.

Prior to trial, appellant moved to suppress evidence, namely any testimony from Trooper Flores as to events occurring after the window tint test (i.e., the original purpose for the traffic stop) and any recordings capturing those events. The trial court conducted a hearing, at which Trooper Flores testified and the State introduced audio-visual exhibits capturing the traffic stop.  After the hearing, the trial court denied the motion to suppress as to the evidence now challenged on appeal.[4]

At trial, Trooper Flores again testified to the above events and the State played for the jury the audio-visual recordings captured by the trooper's dash camera and body-worn camera.  The jury acquitted appellant on the charge of aggravated assault of a public servant but found appellant guilty of evading arrest. After appellant pleaded true to enhancement allegations, the jury sentenced appellant to thirty-three years' confinement.

Appellant appeals.

## Analysis[5]

Appellant raises two issues for our review.  We begin with the first issue, in which appellant challenges the trial court's denial of his motion to suppress.

---

[3] The State also charged appellant with possession of a firearm by a felon, but that charge is not at issue in this appeal.

[4] The court granted the motion in part to exclude admission of any statements made by appellant after he was arrested but before he received his *Miranda* warnings.

[5] The Supreme Court of Texas ordered the Third Court of Appeals to transfer this case to our court.  *See* Tex. Gov't Code § 73.001.  We are unaware of any conflict between Third Court of Appeals precedent and that of this court on any relevant issue.  *See* Tex. R. App. P. 41.3.

## A. Motion to Suppress

Appellant argues that Trooper Flores illegally prolonged the traffic stop, rendering any evidence gathered unlawfully obtained and therefore inadmissible.

### 1. *Standard of review*

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018). At the hearing on the motion, the trial court is the sole factfinder and judge of the credibility of the witnesses and of the weight to be given their testimony. *Id.* at 190. We therefore afford almost complete deference to the trial court's determinations of historical facts. *Id.* But we review de novo the legal significance of the facts found by the trial court. *Id.*; *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017).

We must view the evidence in the light most favorable to the trial court's decision on the motion. *State v. Garcia*, 569 S.W.3d 142, 152-53 (Tex. Crim. App. 2018). When, as here, the trial court does not make explicit findings of fact, we presume that the court made implicit findings of fact, if supported by the record. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We must defer to the trial court's findings if they, when read in their totality, reasonably support the trial court's legal conclusion. *Garcia*, 569 S.W.3d at 152-53. This is so even if the findings might be ambiguous when viewed piecemeal and in isolation. *Id.* We give non-technical, common-sense deference to each finding individually and to the totality of the findings. *See id.*

We sustain the trial court's decision on the motion if it is correct under any applicable theory of law. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App.

2018).  We may reverse only when the decision is arbitrary, unreasonable, or outside the zone of reasonable disagreement.  *Id.*

## 2.    *Prolonged detentions*

The Fourth Amendment to the United States Constitution protects individuals from unreasonable seizures, and evidence obtained as a result of an unreasonable seizure may be suppressed.  *E.g.*, *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).  When police officers signal that a driver should stop a moving vehicle, and in response the driver actually stops the vehicle, then the vehicles occupants have been seized under the Fourth Amendment.  *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *see also Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (noting that a police car's flashing lights and pursuit constitute a "show of authority" required for a Fourth Amendment seizure).  The seizure continues for the duration of the traffic stop, and the seizure terminates when the police inform the driver and any passengers that they are free to leave.  *See Johnson*, 555 U.S. at 333.

Because a routine traffic stop is a detention, the stop must be reasonable under both the federal and Texas constitutions.  *See Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  To be reasonable, a traffic stop must be temporary and last no longer than necessary to effectuate its original purpose.  *Ohio v. Robinette*, 519 U.S. 33, 50 (1996); *see also Johnson*, 555 U.S. at 334; *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).  On a routine traffic stop, an officer may inquire into matters unrelated to the stop as long as the stop is not unreasonably extended.  *See Branch v. State*, 335 S.W.3d 893, 900 (Tex. App.—Austin 2011, pet. ref'd).  Police officers may also request certain information from a driver, such as license and car registration, and may conduct a computer check on that information.  *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).  It is only

after this computer check is completed, and the officer knows that the driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic stop is fully resolved. *Id.*

Once the reason for the traffic stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 242 (internal quotation omitted). Rather, officers must have a reasonable suspicion of criminal activity in order to continue detaining an individual. *Terry*, 392 U.S. at 19-20; *Wolf v. State*, 137 S.W.3d 797, 802 (Tex. App.—Waco 2004, no pet.).

It is not per se unreasonable to ask questions or request consent to search after a detention is completed, as long as a message is not conveyed by the officer's words or acts that compliance is required. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991); *see also Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997); *Leach v. State*, 35 S.W.3d 232, 235 (Tex. App.—Austin 2000, no pet.).[6] The converse is true as well: because an officer may request consent to search after a stop is completed, he also may request consent during a stop. *Magana v. State*, 177 S.W.3d 670, 673 (Tex. App.—Houston [1st Dist.] 2005, no pet.). However, the officer may not further detain the occupant or the vehicle if consent is refused, unless reasonable suspicion of some criminal activity exists. *James v. State*, 102 S.W.3d 162, 173 (Tex. App.—Fort Worth 2003, pet. ref'd). A search obtained through voluntary consent is "constitutionally reasonable." *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010) (internal quotation marks omitted).

---

[6] Consent to search is an exception to the Fourth Amendment's warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997); *Myers v. State*, 203 S.W.3d 873, 886 (Tex. App.—Eastland 2006, pet. ref'd).

3.     *Application*

It is undisputed that Trooper Flores had adequate justification to initiate the traffic stop. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (officer may initiate a traffic stop if he reasonably suspects that the driver has violated the law). Appellant, however, contends that the trooper unlawfully prolonged the detention after confirming the original reason for the stop. According to appellant, the purpose of the traffic stop was satisfied once Trooper Flores confirmed the illegal window tint, and from that point forward—including the trooper's requests to see the contents of the cooler and cup—appellant was illegally detained. Further, appellant argues, even if appellant voluntarily consented to Trooper Flores's search (which he disputes), such consent does not attenuate the taint from the prolonged detention.

We first consider the length of time between when Trooper Flores exited his patrol car until appellant consented to Trooper Flores's search of the cooler and cup. The testimony and the video recordings demonstrate that less than two minutes had passed. Trooper Flores discussed with appellant the reason for the stop and obtained appellant's license and proof of insurance. These actions were part of a routine traffic stop. *See Kothe*, 152 S.W.3d at 63. But before Trooper Flores had completed his window tint investigation, he saw the cooler on the front passenger floorboard and asked if appellant would open it. Appellant opened the cooler. Immediately thereafter, Trooper Flores asked if he could see inside the cup, and appellant handed the cup to him. At that time, Trooper Flores had not yet checked appellant's license and registration in his computer and had not issued (or chosen not to issue) a citation for the illegal window tint. When appellant consented to the cooler and cup search, therefore, the reason for the traffic stop had not been resolved and there is no indication that Trooper Flores was unduly

8

prolonging the necessary steps to resolve the stop. *See Lerma*, 543 S.W.3d at 190-91 (noting that there is no *per se* rule that an officer must immediately conduct a computer check on the driver's information before questioning the occupants of the vehicle about matters unrelated to the purpose of the stop, so long as the questioning does not measurably extend the duration of the stop); *see also Kothe*, 152 S.W.3d at 63-64; *Richardson v. State*, 494 S.W.3d 302, 304 (Tex. App.—Waco 2015, no pet.).

Accordingly, the evidence shows that Trooper Flores asked to see the contents of the cooler and the cup while still actively engaged in processing the traffic stop, which was permissible under the Fourth Amendment. *See Lerma*, 543 S.W.3d at 190 (officer may ask driver about matters unrelated to purpose of the stop, so long as the questioning does not measurably extend the duration of the stop); *see also Magana*, 177 S.W.3d at 673 (officer may request consent to search during a stop). Trooper Flores testified that he "would have been done with that"—i.e., not pursued the search of the cooler—if appellant had refused consent. *See James*, 102 S.W.3d at 173.

Viewing the evidence and all reasonable inferences in favor of the trial court's ruling, we conclude that the record supports an implied finding that appellant was not detained unreasonably beyond the scope of the initial traffic stop and that any further delay was the result of appellant's decision to consent to the search of the cooler and the cup. *See Lerma*, 543 S.W.3d at 195 (concluding that five minutes between initial traffic stop and moment when officer discovered that suspect had provided false name was not unreasonable amount of time to investigate); *Greer v. State*, No. 14-18-01000-CR, 2020 WL 6439721, at *5 (Tex. App.—Houston [14th Dist.] Nov. 3, 2020, pet. ref'd) (mem. op., not designated for publication) (three minutes between initial stop and moment when suspect

admitted he had a weapon was not unreasonable amount of time to investigate); *see also Martin v. State*, 565 S.W.3d 814, 821 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Tran v. State*, No. 01-18-00623-CR, 2019 WL 5243102, at *5 (Tex. App.—Houston [1st Dist.] Oct. 17, 2019, no pet.) (mem. op., not designated for publication); *Johnson v. State*, No. 03-18-00187-CR, 2019 WL 1233872, at *4 (Tex. App.—Austin Mar. 15, 2019, no pet.) (mem. op., not designated for publication). Further, once Trooper Flores saw beer cans inside the cooler, and what appeared to be beer inside the cup, he had reasonable suspicion of criminal activity and was justified in extending the detention for a reasonable period to investigate. *See Lerma*, 543 S.W.3d at 191; *Tran*, 2019 WL 5243102, at *5. Before Trooper Flores could complete the investigation, appellant resisted restraint and fled the scene.

Appellant maintains, however, that his consent was not voluntary. Consent is not voluntary if it is the product of duress or coercion, either actual or implied. *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007). Consent is not established by showing no more than acquiescence to a lawful authority. *Orosco v. State*, 394 S.W.3d 65, 70 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The State must prove the voluntariness of a consent to search by clear and convincing evidence. *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011).

In determining voluntariness, courts review the totality of the circumstances of a particular police-citizen interaction from the point of view of an objectively reasonable person, without regard for the subjective thoughts or intent of either the officer or the citizen. *Id.* "By looking at the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor deemed relevant, a trial court can determine whether the statement of consent was given voluntarily." *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). Courts

have considered several non-exhaustive factors in determining whether consent was voluntary, including: the youth, education, and intelligence of the accused; the constitutional advice given to him; the length of the detention; the repetitiveness of the questioning; and the use of physical punishment. *Id.*; *see also State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008) ("At bottom, the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of 'We Who Must Be Obeyed.'"). "Because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless is it clearly erroneous." *Meekins*, 340 S.W.3d at 460.

Appellant asserts that by opening the cooler and by handing Trooper Flores his cup, he merely acquiesced to the trooper's show of authority. According to appellant, because Trooper Flores "exhibited an aggressive, overbearing demeanor during the entire encounter, beginning with him yelling at Appellant to get back inside his car," and by approaching the car with his hand on his (holstered) service weapon, appellant felt compelled to comply with the trooper's requests. Further, appellant urges, his actions did not constitute nonverbal consent to search. Appellant also points to the fact that Trooper Flores never told him that he did not have to consent.

Based on the totality of the circumstances, we conclude the trial court did not abuse its discretion in rejecting appellant's suppression motion on this basis. Trooper Flores testified that appellant was completely compliant while inside the vehicle. The initial interaction was brief, and Trooper Flores asked appellant to show him the contents of the cooler and cup less than two minutes into the stop. Trooper Flores neither made threats nor engaged in coercive tactics while communicating, and he no longer had his hand on his service weapon when questioning appellant. The trooper only asked once to see inside the cooler and the

11

cup, and his requests—"Can you do me a favor, can you open up that cooler?" and "May I see your cup?"—did not evince a persistent and protracted show of authority. As the video reflects, appellant immediately agreed to these requests, without objection or hesitation. And while Trooper Flores did not inform appellant that he could refuse consent, the trooper had no affirmative duty to do so. *See Manzi v. State*, 56 S.W.3d 710, 719 (Tex. App.—Houston [14th Dist.] 2001), *aff'd*, 88 S.W.3d 240 (Tex. Crim. App. 2002); *see also Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002) (stating that officer's failure to inform suspect of right to refuse consent does not automatically render consent involuntary). The record supports an implied finding that appellant voluntarily consented to the search.[7] *E.g.*, *Blackshire v. State*, No. 14-20-00409-CR, 2021 WL 3729287, at \*5 (Tex. App.—Houston [14th Dist.] Aug. 24, 2021, no pet.) (mem. op., not designated for publication) (record supported finding of consent) (citing *Meekins*, 340 S.W.3d at 463-64); *Tran*, 2019 WL 5243102, at \*1-3 (defendant who removed his seatbelt and exited his car after officer asked if he could search the vehicle impliedly consented to a search of the vehicle).

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that Trooper Flores's actions were reasonable under the circumstances, and the detention as a whole was reasonable and not unduly prolonged. Because neither the stop nor its duration violated the Fourth Amendment, any evidence stemming from the traffic stop, including Trooper Flores's testimony and the dashcam and bodycam recordings, was not unconstitutionally tainted and need not be suppressed. *See Lerma*, 543 S.W.3d at

---

[7] Appellant also argues that, even if we conclude that his consent was voluntary, we nevertheless should conclude that the motion to suppress should have been granted because the taint otherwise inherent in the illegality of the unlawfully prolonged detention had not dissipated before appellant consented. Given our determination above that the detention was not unduly prolonged, we need not address this contention. *See* Tex. R. App. P. 47.1.

190; *Greer*, 2020 WL 6439721, at \*5; *Tran*, 2019 WL 5243102, at \*4-5; *Johnson*, 2019 WL 1233872, at \*5. We overrule appellant's first issue.

## B.    Motion for Mistrial

During the guilt-innocence phase of trial, appellant unsuccessfully moved for a mistrial. In his motion, appellant argued that one or more jurors saw him in handcuffs while an officer escorted him down a hallway past the jury room. In his second issue, appellant challenges the trial court's denial of his motion for mistrial.

### 1.    *Standard of review*

A mistrial is a device used to halt trial proceedings when error occurring during trial is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009). The propriety of a mistrial depends on the facts of each case and is appropriate only in extreme circumstances "for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A mistrial therefore should be "exceedingly uncommon," *Hudson v. State*, 179 S.W.3d 731, 738 (Tex. App.—Houston [14th Dist.] 2005, no pet.), and granted "only when residual prejudice remains after less drastic alternatives are explored." *Ocon*, 284 S.W.3d at 884-85 (internal quotation omitted).

A denial of a motion for mistrial is reviewed under an abuse of discretion standard, and we must uphold a trial court's ruling if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

### 2.    *Defendants in restraints*

It is generally improper for an accused to be brought into the courtroom or into the view of the jury or jury panel while physically restrained by handcuffs or

leg shackles because it infringes the constitutionally guaranteed presumption of innocence. *See Clark v. State*, 717 S.W.2d 910, 918 (Tex. Crim. App. 1986). Thus, every effort should be made to prevent the jury from seeing the defendant restrained, barring a showing of exceptional circumstances or a manifest need for such restraint. *Id.* at 918-19.

The rules are different, however, when a defendant is under physical restraint *outside* the courtroom. *See Pina v. State*, 38 S.W.3d 730, 741 (Tex. App.—Texarkana 2001, pet. ref'd). A momentary, inadvertent, and fortuitous encounter away from the courtroom between a handcuffed accused and members of the jury does not necessarily call for a mistrial or reversal. *See Hernandez v. State*, 805 S.W.2d 409, 414-15 (Tex. Crim. App. 1990); *Clark*, 717 S.W.2d at 919. An appellant must make an affirmative showing of prejudice from such an encounter to be entitled to a reversal. *Swanson v. State*, 722 S.W.2d 158, 163 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd). Moreover, any prejudice arising from an inadvertent glimpse of a handcuffed defendant may be cured by a proper instruction. *Id.*

3.    *Application*

After the first day of trial concluded, Caldwell County Sheriff's Department Officer James Stubblefield, Jr., escorted appellant from the courtroom to a transport van. Officer Stubblefield and appellant entered a hallway that passed a door leading to either the jury room itself or another area close to the jury room. At least two jurors were in the area near the jury room but on the opposite side of the door from the hallway where Officer Stubblefield and appellant were walking. The door was closed, but it had a window, the dimensions of which are not shown in the record. As appellant and Officer Stubblefield walked down the hallway past the door, appellant's hands were handcuffed in front of his body. Officer

Stubblefield was positioned between appellant and the jurors, but he told the trial judge that he would not have blocked the jurors' view through the window because appellant was larger than the officer. Officer Stubblefield believed that both he and appellant made eye contact with one or more of the jurors through the window.

The next morning, appellant moved for a mistrial based on his belief that one or more jurors had seen him in handcuffs. The trial court convened the jury and asked them if anyone had seen appellant the day before:

> Ladies and gentlemen, before we begin or resume with the trial I need to ask you: Yesterday morning when I read the instructions to you, you heard some instructions about not talking to the lawyers and the parties and whatnot in the case. I need to know if any of you saw the defendant after court was finished yesterday anywhere in this building? Did anybody see the defendant? No? Not in the hallway or anything of that nature? Okay.

There is no indication in the court reporter's record that any juror responded to the judge's questions affirmatively. At a bench conference outside the jury's hearing, appellant's counsel renewed her objection, stating, "I believe at least two of the jurors are not being honest about seeing the defendant at all." The judge responded, "I've asked them," and then denied the motion for mistrial.

Based on the encounter described by Officer Stubblefield, along with the absence of any affirmation from a juror that appellant was seen in handcuffs, we conclude that appellant has not established any violation or prejudice on this record. *See, e.g.*, *Redic v. State*, No. 14-98-00560-CR, 2000 WL 800481, at *16 (Tex. App.—Houston [14th Dist.] June 22, 2000, no pet.) (not designated for publication) ("However, if there is no evidence that the jury actually saw the defendant in shackles, the defendant is not harmed or prejudiced in any way."); *Young v. State*, No. 09-06-00429-CR, 2007 WL 2127243, at *2 (Tex. App.— Beaumont July 25, 2007, pet. ref'd) (mem. op., not designated for publication)

15

("Because the prejudice arises from the impression jail clothing and restraints have on jurors, mere exposure will not be prejudicial if unnoticed by them."); *accord also Clark*, 717 S.W.2d at 919 (even when jurors see shackled defendant, when event is momentary, inadvertent, and away from the courtroom, occurrence does not necessarily call for a mistrial).

We overrule appellant's second issue.

## Conclusion

We affirm the trial court's judgment.

/s/  Kevin Jewell
    Justice

Panel consists of Justices Jewell, Spain, and Wilson. (Spain, J., joining the opinion and judgment and separately concurring).

Do Not Publish — Tex. R. App. P. 47.2(b).